1  RACHEL KREVANS (CA SBN 116421)          ROBERT J. ARTUZ (CA SBN 227789)
   *rkrevans@mofo.com*                       *rartuz@kilpatricktownsend.com*
2  RICHARD S.J. HUNG (CA SBN 197425)        SCOTT KOLASSA (SBN 294732)
   *rhung@mofo.com*                          *skolassa@kilpatricktownsend.com*
3  MORRISON & FOERSTER LLP                   KILPATRICK TOWNSEND & STOCKTON LLP
   425 Market Street                         1080 Marsh Road
4  San Francisco, California  94105-2482     Menlo Park, CA 94025
   Telephone:  (415) 268-7000                Telephone:  (650) 326-2400
5  Facsimile:  (415) 268-7522                Facsimile:  (650) 326-2422

6  Attorneys for Defendant                   BENJAMIN M. KLEINMAN-GREEN
   AIRWATCH, LLC                             (CA SBN 261846)
7                                            *bkleinman-green@kilpatricktownsend.com*
                                             KILPATRICK TOWNSEND & STOCKTON LLP
8                                            Eighth Floor, Two Embarcadero Center
                                             San Francisco, CA 94111
9                                            Telephone:  (415) 576-0200
                                             Facsimile:  (415) 576-0300
10
                                             SUSAN A. CAHOON (*Pro Hac Vice*)
11                                           *scahoon@kilpatricktownsend.com*
                                             KILPATRICK TOWNSEND & STOCKTON LLP
12                                           1100 Peachtree Street NE, Suite 2800
                                             Atlanta, GA 30309
13                                           Telephone:  (404) 815-6500
                                             Facsimile:  (404) 815-6555
14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                          SAN JOSE DIVISION

18

19  GOOD TECHNOLOGY CORP.                    Case No. 5:12-cv-05827-PSG
    & GOOD TECHNOLOGY SOFTWARE,
20  INC.,                                    **AIRWATCH'S CORRECTED MOTION
                                             FOR LEAVE TO SUPPLEMENT ITS
21              Plaintiff,                    INVALIDITY CONTENTIONS**

22       v.                                  Date:      Tuesday, December 16, 2014
                                             Time:      10:00am
23  AIRWATCH, LLC,                           Ctrm:      5, 4th Floor

24              Defendant.

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND .................................................................................. 2

    A.   AirWatch Diligently Searched for Prior Art in Connection With Its Original Invalidity Contentions ............................................................. 2

    B.   AirWatch Has Supplemented Its Invalidity Contentions in Response to Good's Supplement of Its Infringement Contentions ............................ 3

        1.   AirWatch amended its invalidity contentions after receiving Good's lengthy supplement to its infringement contentions ................... 3

        2.   AirWatch has identified one additional prior art reference implicated by Good's recent supplement ........................................ 5

    C.   AirWatch Pursued Third-Party Discovery to Support Its Invalidity Contentions Based on Prior Art Systems ......................................... 6

        1.   Windows NT and Windows SMS ....................................... 6

        2.   Altiris ............................................................................ 7

        3.   PDA Defense ................................................................... 8

    D.   AirWatch Identified New Prior Art Based on Good's Representations ............... 10

        1.   The '606 patent as prior art to the '219 patent ..................................... 11

        2.   Loveland .......................................................................... 12

    E.   AirWatch Supplemented Its Invalidity Contentions to Add Prior Art Discovered in Connection with VMware's IPR Petitions .......................... 13

    F.   AirWatch Supplemented Its Invalidity Contentions Based on the Court's Claim Construction Order ................................................... 13

    G.   AirWatch Endeavored to Resolve the Parties' Supplementation of Contentions Without Burdening the Court ........................................ 14

II.  LEGAL STANDARD ..................................................................................... 14

III. ARGUMENT .............................................................................................. 15

    A.   AirWatch Diligently Supplemented Its Contentions ................................... 16

        1.   AirWatch diligently amended its contentions based on Good's supplemental infringement contentions ..................................... 16

        2.   AirWatch diligently sought discovery on prior art systems .................... 17

        3.   AirWatch diligently identified new prior art based on its evaluation of Good's representations ........................................... 18

        4.   AirWatch diligently supplemented its contentions with prior art discovered in connection with VMware IPR petitions ........................ 19

        5.   AirWatch diligently supplemented its contentions based on the Court's claim construction order .................................................. 19

    B.   AirWatch's Supplemental Contentions Are Highly Relevant ............................. 20

    C.   AirWatch's Supplements Will Not Unreasonably Prejudice Good ...................... 20

    D.   No Gamesmanship Exists .......................................................... 22

**TABLE OF CONTENTS**
(continued)

Page

IV.   CONCLUSION ........................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3   CASES

4   *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.,*
        No. C 04-032526 SI, 2008 WL 2168379 (N.D. Cal. May 22, 2008) ...................................... 15
5

6   *Apple Inc. v. Samsung Elecs. Co.,*
        No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) ............................... 15

7
    *DCG Sys., Inc. v. Checkpoint Techs., LLC,*
8       No. C 11-03792 PSG, 2012 U.S. Dist. LEXIS 117370 (N.D. Cal. Aug. 20, 2012) .............. 17

9   *Fujifilm Corp. v. Motorola Mobility LLC,*
        No. C 12-03587 WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) ......................... 14, 15, 18
10

11  *Linex Techs., Inc. v. Hewlett-Packard Co.,*
        No. C 13-159 CW, 2013 WL 5955548 (N.D. Cal. Nov. 6, 2013) ......................................... 15

12
    *Network Protection Scis., LLC v. Fortinet, Inc.,*
13      No. C 12-01106 WHA, 2013 WL 1949051 (N.D. Cal. 2013) ............................................... 20

14  *Oy Ajat, Ltd. v. Vatech Am., Inc.,*
        No. 10-4875, 2012 U.S. LEXIS 43443 (D.N.J. Mar. 30, 2012) ...................................... 19, 22
15

16  *Positive Techs., Inc. v. Sony Elecs., Inc.,*
        No. C-11-02226 SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ................................... 19, 20

17
    *Streak Prods., Inc. v. Antec, Inc.,*
18      C09-04255 RS (HRL), 2010 WL 3515752 (N.D. Cal. Sept. 8, 2010) .................................. 14

19  *Symantec Corp. v. Veeam Corp.,*
        No. C 12-00700 SI, 2013 WL 3490392 (N.D. Cal. July 11, 2013) ................................. 18, 21
20

21  *Theranos, Inc. v. Fuisz Pharma LLC,*
        No. C 11-05236 PSG, 2013 WL 5487356 (N.D. Cal. Oct. 2, 2013) ................................... 15

22  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
        No. C 12-05501 SI, 2014 WL 1648175 (N.D. Cal. Apr. 23, 2014) ...................................... 17
23

24  *Yodlee, Inc. v. CashEdge, Inc.,*
        No. C 05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007) ...................................... 17
25

26  STATUTES

27  35 U.S.C. § 112(a) ........................................................................................................................ 11

28

**OTHER AUTHORITIES**

Patent L.R. 3-1 ................................................................................................................ 3

Patent L.R. 3-3 ........................................................................................................... passim

Patent L.R. 3-6 ................................................................................. 1, 14, 15, 18

1

2

## NOTICE OF MOTION AND MOTION

3        Under Patent Local Rules 3-3 and 3-6, AirWatch moves for leave to amend its invalidity

4   contentions relating U.S. Patent No. 6,151,606, ("the '606 patent"), U.S. Patent No. 8,012,219

5   ("the '219 patent"), U.S. Patent No. 7,970,386 ("the '386 patent").  AirWatch bases its motion on

6   this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the

7   supporting declaration of Joshua A. Hartman filed herewith; any Reply papers to be filed; all

8   papers and pleadings on file in this action; and evidence and argument that the parties may

9   present before or at the hearing on this matter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

AirWatch seeks leave to supplement its invalidity contentions with the following:

1)  Supplemental contentions for previously identified prior art and contentions for two additional prior art references that AirWatch developed in response to Good's second and third supplemental infringement contentions;

2)  Supplemental contentions for prior art systems that AirWatch developed based on information obtained through third-party discovery;

3)  Two additional prior art references already known to Good that are implicated by representations it has made;

4)  Three additional prior art references first discovered in connection with *inter partes review* ("IPR") petitions filed by AirWatch's parent, VMware;  and

5)  Revisions to claim charts for certain previously disclosed prior art references in order to apply the Court's claim construction order.

Good cause exists for AirWatch's supplemental contentions.  Throughout this case, both parties have felt it necessary to revise and supplement their contentions as discovery has proceeded.  On its part, Good served *four separate sets* of infringement contentions.  These have included a second supplement spanning *thousands of pages* on May 16, 2014, and another 450+ page supplement just last Friday.  In response to these supplements, AirWatch diligently reexamined its invalidity contentions and promptly served supplemental contentions.  These supplements include revised certain claim charts for references identified in AirWatch's original contentions that identify additional support as well as two additional prior art references implicated by Good's new "passcode timeout" infringement theory in its latest contentions.

In addition, AirWatch has diligently supplemented its invalidity contentions by: (i) pursuing discovery related to prior art systems disclosed in AirWatch's original invalidity contentions, including by reviewing third-party source code; (ii) searching for and evaluating additional prior art based on Good's representations concerning the '606 and '386 patents in suit; (iii) identifying and charting contentions additional prior art references discovered in connection with the VMware IPR petitions promptly after those petitions were filed; and (iv) including with this motion revised claim charts that apply the Court's claim construction order for previously disclosed prior art to the '606 and '219 patents.

None of these supplements would prejudice Good.  Good cannot claim unfair surprise, as

the bulk of the supplements concern prior art references that AirWatch already included in its original invalidity contentions or with which Good is already well-acquainted.  The six truly new prior art references amount to two new anticipatory references and two new obviousness combinations.  As three of these new references are at issue in the VMware IPRs, Good will not be further burdened by litigating them here.  Moreover, AirWatch has sought to use supplementation to narrow and focus its case, thereby reducing any possible prejudice to Good.

Finally, AirWatch's proposed supplements were made in good faith and occurred as the parties refined their positions during the ordinary course of litigation.  For at least these reasons, AirWatch's motion for leave to supplement its invalidity contentions should be granted.

## I.    FACTUAL BACKGROUND

### A.    AirWatch Diligently Searched for Prior Art in Connection With Its Original Invalidity Contentions

AirWatch's original invalidity contentions were the result of diligent searching.  AirWatch commissioned three prior art search firms to identify potential prior art.[1]  AirWatch's attorneys also separately searched for potential prior art, devoting more than 200 hours to searching for and evaluating potential prior art.[2]  All of these efforts yielded the forty claim charts included in AirWatch's original contentions, served in September 2013, which explained how the following references (and others) anticipate or render obvious the asserted patents:[3]

| '606 Charted References | '322 Charted References | '386 Charted References | '219 Charted References |
|---|---|---|---|
| • Canadian Patent No. 2,149,337 (Clark CA) | • U.S. Patent No. 7,480,907 (Marolia 907) | • U.S. Patent App. No. 2002/0098840 (Hanson) | • U.S. Patent No. 8,813,487 (Trommelen) |
| • U.S. Patent No. 5,928,329 (Clark US) | • U.S. Patent No. 8,250,565 (Marolia 565) | • U.S. Patent App. No. 2005/0003804 (Huomo) | • U.S. Patent No. 7,496,957 (Howard) |

---

[1] Declaration of Ben Kleinman-Green ("Kleinman-Green Decl."), filed herewith, at ¶ 2.

[2] *Id.* at ¶ 3.

[3] AirWatch's Invalidity Contentions Pursuant to Patent L.R. 3-3 at 15-16 (Sept. 3, 2013) (Declaration of Joshua A. Hartman ("Hartman Decl."), filed herewith, Ex. 1).

| '606 Charted References | '322 Charted References | '386 Charted References | '219 Charted References |
| --- | --- | --- | --- |
| • U.S. Patent No. 5,987,609 (Hasebe) | • U.S. Patent No. 7,987,449 (Marolia 449) | • Altiris 6 Handheld Management Suite (Altiris) | • PDA Defense Enterprise v. 2.0 (PDA Defense) |
| • Microsoft Windows NT 4.0 (Windows NT) | • Microsoft Systems Management Server 2003 (Microsoft SMS) | • Microsoft SMS | • Windows NT |
| • Combining Location and Data Management in an Environment for Total Mobility (Total Mobility) | • U.S. Patent No. 7,624,393 (Egan) | | |

**B.      AirWatch Has Supplemented Its Invalidity Contentions in Response to Good's Supplement of Its Infringement Contentions**

**1.      AirWatch amended its invalidity contentions after receiving Good's lengthy supplement to its infringement contentions**

Before providing its original invalidity contentions, AirWatch attempted to gain clarity as to Good's infringement contentions.  In August 2013, AirWatch wrote Good about the deficiencies in its infringement contentions.[4]  AirWatch explained that, although Good had served more than 3,000 pages of claim charts, Good had failed to identify specifically where each claim element was found in each of the "versions, editions, and iterations" of each of the *more than twenty* AirWatch "accused instrumentalities"[5] – despite its obligation to do so under the Patent Local Rule 3-1.[6]  As AirWatch explained, the sprawling, unfocused, and conclusory nature of Good's contentions frustrated AirWatch's ability to prepare its invalidity contentions.[7]

Good refused to revise its infringement contentions in any way.[8]  In April 2014, Good

---

[4] J. Lee Ltr. to Good's Counsel (Aug. 23, 2013) (Hartman Decl. Ex. 2).

[5] *Id.* at 2-4.

[6] Patent L.R. 3-1(c).

[7] J. Lee Ltr. to Good's Counsel (Aug. 23, 2013) (Hartman Decl. Ex. 2) at 5.

[8] *See* E. Green Ltr. to J. Lee (Sept. 11, 2013) (Hartman Decl. Ex. 3); J. Lee Ltr. to E. Green (Feb. 21, 2014) (Hartman Decl. Ex. 4); G. Smith Ltr. to J. Lee (Mar. 17, 2014) (Hartman Decl. Ex. 5); J. Lee Ltr. to G. Smith (Apr. 8, 2014) (Hartman Decl. Ex. 6).

1   suggested that AirWatch's initial invalidity contentions equally lacked "detail or explanation."[9]

2   In response, AirWatch promised to take a fresh look at its invalidity contentions and amend them,

3   as necessary, to address Good's concerns.[10]

4        On May 16, 2014, Good served supplemental infringement contentions.[11]  But rather than

5   clarify its original contentions, Good provided *over 5,000 pages* of additional claim charts.  These

6   charts were defective for the same reason as Good's original claim charts and, worse, attempted

7   to raise new infringement theories.  For example, Good added a new infringement theory for the

8   '219 patent's "maintaining . . . a list" limitation:

9   - **Good's original contentions:**  "the Accused Instrumentalities provide for
       settings and/or profiles to be pushed to configure a remote device to access
10      one or more corporate servers at the server system";[12]

11  - **Good's supplemental infringement contentions:**  "AirWatch managed
       devices maintain managed app lists, profiles, logs, and/or other information
12      that identify particular apps and their data as corresponding to applications
        and data managed by AirWatch."[13]

13  Good has not withdrawn any portion of its original infringement contentions, and thus apparently

14  intends to rely on both its new and original theories.

15       AirWatch immediately began analyzing the 5,000+ pages of new claim charts included

16  with Good's supplemental infringement contentions.  In light of these new claim charts,

17  AirWatch reexamined its invalidity contentions and determined to make two principal changes

18  based on Good's supplement.  First, AirWatch identified additional support from several of the

19  prior art references for which it had included a claim chart in its original infringement

20  contentions.  Among the references for which AirWatch provided revised claim charts were:

21  Clark CA, Hasebe, and Total Mobility ('606 patent); Marolia 907, Marolia 565, Marolia 449, and

22

23  _____

    [9] G. Smith Email to J. Lee (April 11, 2014) (Hartman Decl. Ex. 7).

24  [10] B. Beard Email to G. Smith (April 18, 2014) (Hartman Decl. Ex. 8).

25  [11] Good's 2d Suppl. Discl. of Asserted Claims & Infringement Contentions to AirWatch (Suppl
    Infringement Contentions) (May 16, 2014) (Hartman Decl. Ex. 9).

26  [12] Good's Discl. of Asserted Claims & Infr. Contentions to AirWatch, Ex. D at 82 (Hartman Decl.
    Ex. 10).

27  [13] Suppl. Infr. Contentions, Ex. D at 221-222 (Hartman Decl. Ex. 11).

28

Egan ('322 patent); Hanson and Huomo ('386 patent); and Trommelen ('219 patent).[14]  Second, AirWatch clarified more specifically which references rendered the patents in suit obvious, when combined.[15]  Consistent with Good's prior request for AirWatch to address alleged deficiencies in its original contentions, AirWatch served supplemental invalidity contentions with more detail and explanation on September 2, 2014.[16]

### 2. AirWatch has identified one additional prior art reference implicated by Good's recent supplement

The evening of Friday, November 7, 2014, Good served a third set of supplemental infringement contentions.[17]  Good previously contended that AirWatch's accused products meet the '386 patent's "rules" limitation based on ambiguous references to "rules from one or more AirWatch servers (AirWatch EMM/MDM/MAM/MCM/App Catalog/Secure Content Locker, etc.) (running on one or more enterprise servers, AirWatch Appliances, and/or hosted in the cloud/SaaS/Professional)[,] [t]he[] rules include[ing] . . . various policies, profiles, and restrictions" shown in unexplained citations to AirWatch's product documentation. [18]  Good's November 7 supplement for the first time specifically identified "passcode features," including "passcode timeout," "maximum failed passcode attempts," and "maximum period of time offline" as meeting the "rules" limitation.[19]

Based on Good's new theory, AirWatch has identified two additional prior art references

---

[14] AirWatch's Corrected Amended Invalidity Contentions Pursuant to Patent L.R. 3-3 (Sept. 5, 2014) (Hartman Decl. Ex. 12).

[15] *Id.*

[16] J. Hartman Email to Good's Counsel (Sept. 2, 2014) (Hartman Decl. Ex. 13).  A corrected version following three days later.  J. Hartman Email to Good's Counsel (Sept. 5, 2014) (Hartman Decl. Ex. 14).  AirWatch's Sept. 2 supplemental contentions included two other additions:  (i) a claim chart showing Good's '606 patent in suit anticipates or renders obvious the '219 patent in suit, which is discussed below; and (ii) contentions that certain asserted claims are indefinite under the Supreme Court's new *Nautilus* standard, which AirWatch provided in conformance with its motion for summary judgment of indefiniteness.

[17] G. Smith Email to R. Hung (Nov. 7, 2014, 6:06 p.m.) (Hartman Decl. Ex. 15).

[18] Good's 2d Suppl. Infr. Contentions, Ex. C at 90 (May 16, 2014) (Hartman Decl. Ex. 16).

[19] Good's 3d Suppl. Infr. Contentions, Ex. C at 45 (Nov. 7, 2014) (Hartman Decl. Ex. 17).

for the '386 patent:  (i) PDA Defense version 3.1,[20] which AirWatch previously referenced in its original invalidity contentions for PDA Defense;[21] and U.S. Patent Application No. 2007/0130255 to Wolovitz et al. (Wolovitz), which AirWatch discovered after reviewing Good's November 7 supplement.[22]  Claim charts for PDA Security and Wolovitz against the '386 patent are included with this motion.[23]

### C.    AirWatch Pursued Third-Party Discovery to Support Its Invalidity Contentions Based on Prior Art Systems

AirWatch's original invalidity contentions included claim charts for several prior art systems that anticipate or render obvious the patents in suit, including claim charts for Windows NT against the '606 and '219 patents, for Windows SMS against the '322 and '386 patents, for Altiris against the '386 patent, and for PDA Defense against the '219 patent.  AirWatch worked diligently to obtain additional support for these contentions during discovery.

### 1.    Windows NT and Windows SMS

On January 30, 2014, AirWatch served a subpoena on Microsoft requesting documents, including source code, related to Windows NT and Windows SMS.[24]  After initial resistance, Microsoft made available for inspection its voluminous source code archives for these prior art systems, as well as documents related to these systems.[25]  AirWatch counsel conducted a preliminary review of the Microsoft source code on May 27 and 28 and reviewed the documents

---

[20] AirWatch's Invalidity Contentions Pursuant to Patent L.R. 3-3, Ex. D-6 at 7-8 (Sept. 3, 2013) (Hartman Decl. Ex. 58) (discussing administrator's ability to create policy file in RIM version of PDA Defense Enterprise v. 3.1); *see also* D. Melnick et al., PDA SECURITY:  INCORPORATING HANDHELDS INTO THE ENTERPRISE at 185 (McGraw-Hill 2003) (Hartman Decl. Ex. 18).

[21] *See* Section I.C.3., *infra*.

[22] Hartman Decl. ¶ 2.

[23] PDA Defense 3.1 '386 Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 72); Wolovitz Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 20).  A redacted version of this claim chart is included with this motion due to claims of third-party confidentiality.  The unredacted version has been provided to counsel for Good.  If requested by the Court, AirWatch can make the unredacted version available to the Court for review.

[24] AirWatch Subpoena to Microsoft (Jan. 30, 2014) (Hartman Decl. Ex. 21).

[25] C. Carraway Email Correspondence with S. Kolassa & B. Kleinman-Green (May 13, 2014) (Hartman Decl. Ex. 22).

1   made available for inspection during the first two weeks of June.[26]

2         AirWatch also engaged a source code analyst, Alan Purdy, to review the source code.

3   After an initial period of study of the patents in suit, Mr. Purdy began a review of the Microsoft

4   source code on June 26, 2014.[27]  Due to the enormous volume of the source code, which related

5   to two separate prior art systems relevant to four different patents in suit, Mr. Purdy continued to

6   review the Microsoft source code throughout July and did not complete his analysis of the source

7   code until late August.[28]  After reviewing both Mr. Purdy's analysis of the Microsoft source code

8   and his printouts of certain source code files, AirWatch served revised claim charts for Windows

9   NT against the '606 and '219 patents and for Windows SMS against the '322 and '386 patents on

10  October 14, 2014.[29]  These revised claim charts did not add new invalidity theories, but merely

11  cited to the source code files corresponding to specific features of Windows NT and Windows

12  SMS.  AirWatch had previously identified these features as disclosing the claim limitations of the

13  asserted patents.[30]

14                           **2.      Altiris**

15        In investigating the Altiris prior art system, AirWatch learned that Symantec had acquired

16  Altiris, Inc., the original developer.  AirWatch therefore served a subpoena on Symantec seeking

17  documents related to the Altiris system on March 25, 2014.[31]  In its initial response to the

18  subpoena, Symantec provided fewer than 1,000 pages of documents related to Altiris and did not

19  make source code available for inspection.[32]

20        After receiving this response, AirWatch continued to pursue Altiris source code from

21
22  [26] Hartman Decl. ¶ 3; *see also* S. Kolassa Ltr. to C. Carraway (June 20, 2014) (Hartman Decl. Ex.23).

    [27] Hartman Decl. ¶ 4.
23
    [28] *Id.*

24  [29] Hartman Decl. ¶ 5.

25  [30] *See* AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3, Exs. A13, B6, C4, D7 (Oct. 14, 2014) (Hartman Decl. Ex. 24).

26  [31] AirWatch's Subpoena to Symantec (Mar. 25, 2014) (Hartman Decl. Ex. 25).

27  [32] B. Straka Ltr. to S. Kolassa (Apr. 2, 2014) (Hartman Decl. Ex. 26); Symantec Resps. & Objs. to Subpoena (Apr. 2, 2014) (Hartman Decl. Ex. 27).

28

Symantec.  Initially, Symantec did not produce Altiris source code; it only made available executable code through a link to a website.[33]

AirWatch downloaded this executable code and engaged its source code analyst, Mr. Purdy, to use it to set up a working Altiris system.[34]  Mr. Purdy began doing so on September 2, 2014, after he completed his work on the Windows NT and Windows SMS code discussed above.[35]  This exercise proved to be technically challenging.  Mr. Purdy needed to use a vintage laptop running Windows 2003 server software and a Dell Axim PDA to set up the Altiris system.[36]  Mr. Purdy succeeded in setting up the Altiris system on September 18 and completed a report containing screenshots of the working system on September 21.[37]  AirWatch served a supplemental claim chart incorporating Mr. Purdy's analysis on October 14.[38]

AirWatch continued to press Symantec on its failure to identify Altiris source code.  After AirWatch threatened motion practice, Symantec finally searched for and found Altiris source code.[39]  Symantec did not make this source code available for AirWatch's review until November 3-6, 2014.[40]  AirWatch has included its supplemental claim chart discussing the Altiris source code as an exhibit to this motion.[41]

### 3.     PDA Defense

Based on its investigation into the PDA Defense system, AirWatch learned that Asynchrony Solutions (Asynchrony) had sold its interests in PDA Defense to another company,

---

[33] B. Straka Email to S. Kolassa (Apr. 29, 2014) (Hartman Decl. Ex. 29).

[34] Hartman Decl. ¶ 6.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *See* AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3, Ex. C3 (Oct. 14, 2014) (Hartman Decl. Ex. 30).

[39] Compilation of Emails Regarding Symantec (Hartman Decl. Ex. 28).

[40] *Id.*

[41] Suppl. Altiris Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 31).  A redacted version of the Supplemental Altiris Claim Chart is included with this motion due to claims of third-party confidentiality.  The unredacted version has been provided to counsel for Good.  If requested by the Court, AirWatch can make the unredacted version available to the Court for review.

JP Mobile, and that Good ultimately had acquired JP Mobile.  Thus, on May 19, 2014, AirWatch propounded requests for production on Good seeking documents and information related to PDA Defense.[42]  Although Good agreed to search for responsive documents,[43] it produced very few documents relating to the PDA Defense system or the JP Mobile acquisition.  None of the documents Good produced provided technical details about PDA Defense.[44]  After the parties exchanged correspondence addressing Good's responses to these requests,[45] Good represented on August 11 that it had "been unable to locate any physical copies of the requested [PDA Defense] software to date."[46]

After receiving Good's representation, AirWatch began pursuing discovery from third parties related to PDA Defense.  AirWatch identified David Melnick, a former president of Asynchrony's PDA Defense division, as likely to have relevant documents and information.  AirWatch served a subpoena on Mr. Melnick on September 18, 2014.[47]  Mr. Melnick was unable to locate relevant documents, but sat for deposition on October 24.[48]

In parallel, AirWatch worked with Mobile Iron, the defendant in a related case against Good, to serve subpoenas on Asynchrony and its co-founder Steve Elfanbaum.[49]  Mobile Iron served these subpoenas on September 22, 2014.[50]  Asynchrony served its objections on September 30.[51]  Asynchrony subsequently located documents and source code and prepared to

---

[42] AirWatch's 4th Set of Individual RFPs (Nos. 93-96) at 3 (May 19, 2014) (Hartman Decl. Ex. 32).

[43] Good's Objs. & Resps. to AirWatch's 4th Set of Individual RFPs (Nos. 93-96) (June 23, 2014) (Hartman Decl. Ex. 33).

[44] Hartman Decl. ¶ 7.

[45] B. Barath Ltr. to G. Smith at 3 (July 3, 2014) (Hartman Decl. Ex. 34); B. Barath & C. Tolliver Email Correspondence (July 24, 2014) (Hartman Decl. Ex. 35); B. Barath Ltr. to C. Tolliver at 9-10 (July 30, 2014) (Hartman Decl. Ex. 36).

[46] G. Smith Email to B. Barath (Aug. 11, 2014) (Hartman Decl. Ex. 37).

[47] AirWatch's Subpoena to D. Melnick (Sept. 18, 2014) (Hartman Decl. Ex. 38).

[48] Melnick Dep. Tr. at 1, 4:1-11 (Oct. 24, 2014) (Hartman Decl. Ex. 47).

[49] Hartman Decl. ¶ 8.

[50] Mobile Iron Subpoena to Asynchrony (Sept. 19, 2014) (Hartman Decl. Ex. 39); Mobile Iron Subpoena to S. Elfanbaum (Sept. 18, 2014) (Hartman Decl. Ex. 40).

[51] J. Schultz Ltr. to G. Liu (Sept. 30, 2014) (Hartman Decl. Ex. 41).

1    produce them.[52]  AirWatch served an identical subpoena on Asynchrony.[53]

2           Good then objected to the disclosure of this code to AirWatch and Mobile Iron, asserting

3    that the confidentiality provisions of the agreements through which the rights in PDA Defense

4    ultimately transferred to Good barred the Asynchrony production in this case despite the

5    Protective Order in effect.[54]  Believing Good's objections to be meritless, AirWatch prepared and

6    sent Good its portion of a joint letter to the Court on this issue on October 30.[55]  Only then did

7    Good withdraw its objection, and Asynchrony served its production on November 3.[56]

8           AirWatch began analyzing the documents and source code immediately upon receipt.

9    AirWatch previously had been able to locate little public information concerning PDA Defense

10   Enterprise v. 3.1.  Through its review of the new materials – which included source code and user

11   guides, AirWatch learned that version 3.1 anticipates or renders obvious the '219 patent's

12   asserted claims.[57]  AirWatch also gained important information about PDA Defense v. 3.1 from

13   Mr. Melnick's deposition, during which he testified that this version was available in the United

14   States before the '219 patent's August 9, 2003, filing date.[58]  With this motion, AirWatch has

15   provided a supplemental PDA Defense claim chart that shows how PDA Defense v. 3.1 reads on

16   the '219 asserted claims.[59]

17              **D.     AirWatch Identified New Prior Art Based on Good's Representations**

18           Apart from supplementing its contentions for prior art that it had included in its original

---

19   [52] G. Liu Email to J. Schultz (Oct. 23, 2014) (Hartman Decl. Ex. 42).

20   [53] AirWatch's Subpoena to Asynchrony (Oct. 24, 2014) (Hartman Decl. Ex. 43).

21   [54] J. Schultz Email to S. Kolassa (Oct. 28, 2014) (Hartman Decl. Ex. 44); S. Kolassa, G. Liu, J. Schultz, and G. Smith Email Correspondence (Oct. 30, 2014) (Hartman Decl. Ex. 45).

22   [55] *Id.*

23   [56] J. Schultz Ltr. to AirWatch & Mobile Iron (Oct. 31, 2014) (Hartman Decl. Ex. 46).

24   [57] Asynchrony produced these materials to AirWatch as "Highly Confidential – Source Code" and "Highly Confidential – Outside Attorneys' Eyes Only" under the Protective Order.  *See* J. Schultz Ltr. (Oct. 31, 2014) (Hartman Decl. Ex. 46).

25   [58] Melnick Dep. Tr. at 37:24-38:12 (Oct. 24, 2014) (Hartman Decl. Ex. 47).

26   [59] PDA Defense 3.1 '219 Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 19).  A redacted version of this claim chart is included with this motion due to claims of third-party confidentiality.  The unredacted version has been provided to counsel for Good.  If requested by the Court, AirWatch can make the unredacted version available to the Court for review.

28

invalidity contentions, AirWatch identified two additional pieces of relevant prior art after

reviewing certain representations by Good in this action.  Those two references are as follows:

(i) for the '219 patent, Good's own '606 patent, which also has been asserted in this litigation;

and (ii) for the '386 patent, U.S. Patent App. Publication No. 2003/0162555 to S. Loveland

(Loveland), which was discussed during prosecution.

### 1.      The '606 patent as prior art to the '219 patent

Claims 1 and 21 of the '606 patent include the requirement that "the automatic disabling

be[] initiated in response to a de-authorization indication at the remote site."[60]  AirWatch has

argued that this limitation is invalid for inadequate written description under 35 U.S.C. § 112(a).[61]

Together with Mobile Iron, AirWatch propounded an interrogatory seeking Good's

contentions as to the portions of the '606 patent that allegedly describe the limitation.[62]  Good's

initial response did nothing but refer AirWatch to the '606 patent's intrinsic record.[63]  Its first

supplemental response was equally deficient.[64]

After AirWatch noted these deficiencies,[65] however, Good provided a second

supplemental response.  In its August 22, 2014, response, Good contended that the portions of the

'606 specification discussing the client site's logout from the global server adequately describe

the "automatic disabling" limitation.[66]

AirWatch disagrees with Good's written description contentions.  If correct, however,

---

[60] '606 patent reexam. cert. at 1:46-48, 2:65-67 (Hartman Decl. Ex. 48).

[61] AirWatch's Invalidity Contentions Pursuant to Patent L.R. 3-3 at 66-67 (Sept. 3, 2013) (Hartman Decl. Ex. 1).

[62] Mobile Iron and AirWatch's 2d Set of Common Interrogs. to Good at 5 (Oct. 7, 2013) (Hartman Decl. Ex. 49).

[63] Good's Objs. & Resps. to Mobile Iron and AirWatch's 2d Set of Common Interrogs. at 6-7 (Nov. 12, 2013) (Hartman Decl. Ex. 50).

[64] Good's Suppl. Objs. & Resps. to Mobile Iron and AirWatch's 2d Set of Common Interrogs. at 6-7 (Jan. 16, 2014) (Hartman Decl. Ex. 51).

[65] B. Barath Ltr. to G. Smith at 5 (June 13, 2014) (Hartman Decl. Ex. 52); B. Barath Ltr. to C. Tolliver at 4-5 (July 30, 2014) (Hartman Decl. Ex. 36).

[66] Good's Am. & Suppl. Objs. & Resps. to Mobile Iron and AirWatch's 1st Set of Common Interrogs. at 10-15 (Aug. 22, 2014) (Hartman Decl. Ex. 53).

1    then the '606 patent discloses the '219 patent's claim limitation, "preventing access to the

2    identified subset of data [on the remote device] based on the transmitted command [from the

3    server system],"[67] and thus anticipates or renders obvious that patent.  Accordingly, on September

4    2, AirWatch served supplemental invalidity contentions identifying the '606 patent as prior art to

5    the '219 patent and including a claim chart showing how it meets the asserted claims.[68]

6                                    **2.      Loveland**

7            During claim construction briefing on the asserted '386 patent, AirWatch discovered that

8    the applicants had mischaracterized the Loveland reference during prosecution.  When properly

9    understood, the Loveland reference anticipates the '386 patent claims.

10           As AirWatch explained in its claim construction briefing, the '386 applicants disclaimed

11   claim scope during prosecution to overcome Loveland.[69]  In particular, the applicants argued that

12   Loveland fails to disclose the claimed wireless device comprising a rules engine because it "at

13   best discloses that the *synchronization server*" acts as the rules engine by "reevaluat[ing] security

14   conditions *of the mobile device* by querying the mobile device."[70]

15          This characterization was incorrect, however.  Contrary to the applicants' description,

16   Loveland expressly discloses that *a wireless device* can act as the claimed rules engine by

17   evaluating its security conditions.[71]  Loveland therefore anticipates the '386 patent claims despite

18   the applicants' disclaimer.  AirWatch thus served supplemental contentions on October 14 that

19   identified Loveland as prior art to the '386 patent and included a claim chart showing how it

20   anticipates the asserted claims.[72]

---

[67] '219 patent at 22:64-65; *see also id.* at 23:53-54, 24:23-26, 25:7-10 (Hartman Decl. Ex. 54).

[68] *See* AirWatch's Amended Invalidity Contentions Pursuant to Patent L.R. 3-3 at 9 and Ex. D9 (Sept. 2, 2014) (Hartman Decl. Ex. 55).

[69] AirWatch's Resp. Claim Construction Br. at 18 (July 14, 2014) (Dkt. No. 108).

[70] April 2, 2010, Response to Office Action at 8 (italics in original) (Dkt. No. 109-7).

[71] U.S. Patent App. Pub. No. 2003/0162555 at [0042] (Hartman Decl. Ex. 56) ("It should be noted that the method 300 may be performed *by either the client 210 (e.g., a mobile device)* or the server 220 (e.g., a synchronization server).") (emphasis added).

[72] AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3 at Ex. C8 (Oct. 14, 2014) (Hartman Decl. Ex. 57).

E.   **AirWatch Supplemented Its Invalidity Contentions to Add Prior Art Discovered in Connection with VMware's IPR Petitions**

On October 14, 2014, AirWatch served invalidity claim charts for one new anticipatory reference and two new obviousness combinations recently discovered in connection with IPR petitions filed by its parent, VMware.[73]  These new references are:  (i) U.S. Patent No. 8,635,661 to M. Shahbazi (Shahbazi);[74] (ii) the combination of U.S. Patent No. 7,921,182 to Hamasaki and U.S. Patent Publication No. 2004/0025053 to Hayward (Hamasaki-Hayward);[75] and the combination of International Publication No. WO 00/45243 to Blomstrand, U.S. Patent Publication No. 2002/0077999 to Fergus, and the Clark CA reference (Blomstrand-Fergus-Clark).[76]  Shahbazi anticipates the '386 asserted claims, and Hamasaki-Hayward and Blomstrand-Fergus-Clark render the '219 asserted claims obvious.  AirWatch served claim charts for these references on October 14, 2014, less than two weeks after VMware filed IPR petitions for the '386 and '219 based on those references on October 6.[77]

F.   **AirWatch Supplemented Its Invalidity Contentions Based on the Court's Claim Construction Order**

Finally, AirWatch proposes to supplement its invalidity contentions for five previously disclosed prior art references based on the Court's October 13, 2014, claim construction order. With this motion, AirWatch has included revised invalidity claim charts for the Clark CA and Clark US references that account for the Court's claim construction rulings on the '606 patent.[78] These revised claim charts apply the Court's constructions of the "untrusted client site," "synchronizing," and "temporary storage" limitations for the '606 patent.

---

[73] AirWatch was acquired by VMware in February 2014.  *See* AirWatch LLC's 2d Suppl. Cert. of Interested Entities or Persons and Corp. Discl. Statement (Mar. 26, 2014) (Dkt. No. 83).

[74] AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3 at Ex. C-9 (Oct. 14, 2014) (Hartman Decl. Ex. 58).

[75] AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3 at Ex. D-11 (Oct. 14, 2014) (Hartman Decl. Ex. 59).

[76] AirWatch's 1st Suppl. Invalidity Contentions Pursuant to Patent L.R. 3-3 at Ex. D-10 (Oct. 14, 2014) (Hartman Decl. Ex. 60).

[77] Hartman Decl. ¶ 9.

[78] *See* Clark US Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 61); Clark CA Claim Chart (Nov. 10, 2014) (Hartman Decl. Ex. 62).

### G.     AirWatch Endeavored to Resolve the Parties' Supplementation of Contentions Without Burdening the Court

AirWatch has repeatedly tried to compromise with Good regarding both parties' supplemental contentions, in order to avoid motion practice.  For example, AirWatch proposed that the parties stipulate to each other's supplemental contentions when it served its September 2, 2014, supplemental invalidity contentions.[79]  AirWatch repeated this proposal multiple times in the following weeks,[80] but Good repeatedly refused.[81]  The parties ultimately agreed that each would file respective motions for leave to supplement by November 10, 2014.[82]

## II.     LEGAL STANDARD

Patent Local Rule 3-6 permits a party to amend its contentions upon a "timely showing of good cause."[83]  The "good cause" inquiry concerns the movant's diligence in discovering the prior art and amending its contentions, as well as whether amendment would unreasonable prejudice the opposing party.[84]  Although the movant bears the burden of showing diligence,[85] it need not demonstrate "perfect diligence."[86]  As this Court has explained, "[a]lthough hindsight is often '20/20,' identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier."[87]

---

[79] Hartman Email to Good (Sept. 2, 2014) (Hartman Decl. Ex. 13); Hartman Email to Good (Sept. 5, 2014) (Hartman Decl. Ex. 14).

[80] E. Kim Email to Counsel (Oct. 7, 2014) (Hartman Decl. Ex. 63); R. Hung Email to S. Pollinger (Oct. 28, 2014) (Hartman Decl. Ex. 64).

[81] *See, e.g.,* C. Tolliver Email to R. Hung (Oct. 17, 2014) (Hartman Decl. Ex. 65).

[82] Stip. and Order Re: Modification of Certain Deadlines (Oct. 23, 2014) (Dkt. No. 163).

[83] Patent L.R. 3-6.

[84] *Streak Prods., Inc. v. Antec, Inc.*, C09-04255 RS (HRL), 2010 WL 3515752, at *2 (N.D. Cal. Sept. 8, 2010).

[85] *Fujifilm Corp. v. Motorola Mobility LLC*, No. C 12-03587 WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)).

[86] *Id.* at *4.

[87] *Id.*

1    Courts also may grant leave to amend if doing so would not unreasonably prejudice the

2    opposing party.[88]  Where a party already has provided notice of the prior art on which it will rely,

3    supplementation of its contentions as to that prior art does not unreasonably prejudice the

4    opposing party.[89]

5          In addition, as part of the good cause inquiry, courts also may consider "the relevance of

6    the newly-discovered prior art, whether the request to amend is motivated by gamesmanship, the

7    difficulty of locating the prior art, and whether the opposing party will be prejudiced by the

8    amendment."[90]  Included among the Patent Local Rules' examples of circumstances that may

9    support a finding of good cause are "[r]ecent discovery of material, prior art despite earlier

10   diligent search" and "[a] claim construction by the Court different from that proposed by the

11   party seeking amendment."[91]

12   **III.   ARGUMENT**

13         Good cause exists for AirWatch's supplementation of its invalidity contentions.

14   AirWatch diligently pursued each category of supplemental contentions during discovery, as

15   discussed above, and provided these contentions to Good as expeditiously as possible.

16         AirWatch's supplemental contentions are highly relevant; AirWatch has focused its

17   motion for leave on its most material prior art to avoid unnecessarily burdening the Court or

18   Good.  Good will not be prejudiced by AirWatch's proposed supplement, as it has had ample

19   notice of almost all prior art references at issue in this motion, an opportunity to take discovery

20

21   [88] *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2013 WL 5955548, at *1 (N.D. Cal. Nov. 6, 2013); *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *6 (N.D. Cal. Nov. 15, 2012) (granting leave to amend infringement contentions

22   despite no showing of diligence because of lack of prejudice to defendants).

23   [89] *See Theranos, Inc. v. Fuisz Pharma LLC*, No. C 11-05236 PSG, 2013 WL 5487356, at *1-2 (N.D. Cal. Oct. 2, 2013) (granting leave to amend to clarify that previous invalidity contentions

24   for a prior art reference applied to dependent claims of the patent in suit because moving party already had provided notice to opposing party that it would rely on that reference).

25   [90] *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.,* No. C 04-032526 SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008); *see also Fujifilm Corp.*, 2014 WL 491745, at *3 (in

26   assessing good cause, courts "can examine such factors as the relevance of the newly-discovered prior art and the difficulty of locating the prior art").

27   [91] Patent L.R. 3-6 (a) & (b).

28

1   on these references.  Given the recent amendments to the schedule, ample time remains for Good

2   to address these references in expert reports, on summary judgment, and at trial.

3        Finally, AirWatch's supplementation is not motivated by gamesmanship.  Instead,

4   AirWatch's supplements are natural refinements of its positions made during the ordinary course

5   of litigation, as shown by the multiple supplements that Good itself has provided.

6                    **A.      AirWatch Diligently Supplemented Its Contentions**

7        AirWatch's original efforts to identify and evaluate prior art to the patents in suit were

8   diligent.  AirWatch's attorneys spent hundreds of hours searching for and evaluating potential

9   prior art.  AirWatch also engaged three prior art search firms to locate additional potential prior

10  art.  These efforts culminated in AirWatch's original invalidity contentions, which disclosed more

11  than 80 prior art references and included forty claim charts.

12       AirWatch has diligently supplemented its contentions by:  (i) promptly analyzing Good's

13  supplemental infringement contentions and, in light of those supplements, reexamining its

14  invalidity contentions; (ii) serving discovery, negotiating with Good and third parties over their

15  responses, and analyzing the documents and source code the third parties produced;

16  (iii) evaluating Good's representations regarding the '606 patent and Loveland reference and

17  developing invalidity contentions based on that prior art; (iv) providing invalidity contentions for

18  one new prior art patent and one prior art obviousness combination discovered in connection with

19  IPR petitions filed by VMware; and (v) including with this motion revised claim charts based on

20  the Court's claim construction order.

21

22                 **1.      AirWatch diligently amended its contentions based on Good's
                          supplemental infringement contentions**

23       AirWatch diligently provided amended invalidity contentions in response to both Good's

24  supplemental infringement contentions and its request for more detailed invalidity contentions.

25  AirWatch was not able to provide more detailed contentions sooner given the deficiencies of

26  Good's initial infringement contentions.  Upon receiving Good's supplemental contentions on

27  May 16, 2014, AirWatch diligently reviewed the more than 5,000 pages of additional

28  infringement claim charts included therein and diligently reexamined its previously served

1   invalidity claim charts and prior art references.[92]  Although these efforts were impacted by

2   AirWatch's engagement of new counsel, Morrison & Foerster, which first appeared in this case in

3   March 2014[93] and therefore was analyzing both parties' contentions anew,[94] AirWatch promptly

4   served revised claim charts which identified further support from previously disclosed prior art

5   references on September 2.  AirWatch did so even though Good never sought leave for its

6   supplemental contentions.  In addition, AirWatch promptly identified two additional prior art

7   references – PDA Security and Wolovitz – on the very next business day after receiving Good's

8   November 7 supplemental infringement contentions for the '386 patent, in which Good first

9   identified "passcode features" as meeting that patent's "rules" limitation.  Courts have concluded

10  that diligence satisfying the good cause standard existed in similar circumstances.[95]

11                     **2.      AirWatch diligently sought discovery on prior art systems**

12          AirWatch diligently pursued discovery concerning the Windows NT, Windows SMS,

13  Altiris, and PDA Defense references and diligently supplemented its contentions based on the

14  information it obtained.  AirWatch began pursuing this discovery long before the close of fact

15  discovery.  It served a subpoena relating to Windows NT and Windows SMS on Microsoft in

16  January 2014.[96]  After researching persons likely to have knowledge, AirWatch served the

17  subpoena relating to Altiris on Symantec in March 2014 and propounded discovery on Good

18  relating to PDA Defense in May 2014.[97]  Further, once Good represented that it did not possess

19  PDA Defense source code, AirWatch promptly sought discovery from third parties, serving a

20  _____

21  [92] *See* Section I.B., *supra.*

    [93] B. Beard Not. of Appearance (Mar. 18, 2014) (Dkt. No. 75); R. Krevans Not. of Appearance
22  (Mar. 18, 2014) (Dkt. No. 76); R. Hung Not. of Appearance (Mar. 18, 2014) (Dkt. No. 77).

    [94] *See Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259, at *1-4 (N.D. Cal.
23  May 17, 2007) (granting motion to amend where new counsel discovered prior art).

24  [95] *See, e.g., Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL
    1648175, *1-3 (N.D. Cal. Apr. 23, 2014) (granting defendant leave to amend invalidity
25  contentions following patentee's amendment of infringement contentions); *DCG Sys., Inc. v.
    Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 U.S. Dist. LEXIS 117370, at *4 (N.D. Cal.
26  Aug. 20, 2012) (same).

27  [96] *See* Section I.C.3., *supra.*

    [97] *Id.*
28

1   subpoena on David Melnick, former president of Asynchrony's PDA Defense division, and

2   working with Mobile Iron to serve subpoenas on Asynchrony and its founder, Steve Elfanbaum.[98]

3       AirWatch invested a substantial amount of time in following up on this discovery.  It

4   negotiated with Symantec regarding Altiris and with both Good and Asynchrony regarding PDA

5   Defense, successfully avoiding motions practice in all instances.[99]  AirWatch's source code

6   analyst, Alan Purdy, spent approximately two months analyzing extensive Microsoft source code

7   for Windows NT and Windows SMS and devoted weeks to setting up the working Altiris system

8   using the executable code identified by Symantec.[100]

9       Upon completing its analysis of the documents and source code it obtained, AirWatch

10   promptly served supplemental contentions.  AirWatch provided supplemental claim charts for

11   Windows NT and Windows SMS only weeks after receiving Mr. Purdy's analysis and it has

12   included supplemental claim charts for Altiris and PDA Defense with this motion despite only

13   receiving source code and, in the case of PDA Defense documents just last week.[101]  AirWatch's

14   prompt supplementation of its contentions for Windows NT, Windows SMS, Altiris, and PDA

15   Defense despite the difficulty of obtaining relevant information demonstrates its diligence.[102]

16

17       **3.**    **AirWatch diligently identified new prior art based on its evaluation of Good's representations**

18       AirWatch also diligently investigated new prior art for the '219 and '386 patents after

19   evaluating Good's representations about those patents.  AirWatch supplemented its contentions to

20   include the '606 patent as prior art to the '219 patent less than two weeks after Good

21   _____

22   [98] *Id.*

23   [99] *Id.*

    [100] *Id.*

24   [101] *Id.*

25   [102] *See Fujifilm Corp.*, 2014 WL 491745, at *4-5 (granting leave to amend invalidity contentions to assert five additional prior art references based on information obtained through information discovery requests); Patent L.R. 3-6 ("Recent discovery of material, prior art despite earlier diligent search" can support finding of good cause); *Symantec Corp. v. Veeam Corp.*, No. C 12-00700 SI, 2013 WL 3490392, at *1–3 (N.D. Cal. July 11, 2013) (granting leave to amend where defendant sought to add prior art after plaintiff produced relevant documents).

28

supplemented its interrogatory response on the written description of the "disabling access" limitations of '606 claims 1 and 21.[103]  Moreover, Good provided this supplemental response only after AirWatch complained about Good's prior deficient responses.[104]

For the '386 patent, AirWatch promptly supplemented its contentions to include the Loveland reference after discovering during claim construction that the '386 patent applicants had mischaracterized that reference during prosecution.[105]  Courts have found that the patentee's representations about its inventions, including statements made during the course of litigation, justify renewed efforts to identify prior art and therefore support a showing of diligence.[106]

> ### 4.   AirWatch diligently supplemented its contentions with prior art discovered in connection with VMware IPR petitions

AirWatch diligently supplemented its contentions based on prior art discovered in connection with IPR petitions filed by VMware.  VMware filed an IPR petition for the '386 patent based in part on the Shabahzi reference.  It filed an IPR petition for the '219 patent based in part on the Hamasaki-Hayward and Blomstrand-Fergus-Clark combinations.  After VMware filed both IPR petitions on October 6, 2014, AirWatch promptly supplemented its invalidity contentions with claim charts for these references on October 14.  At least one court has found diligence where a party sought to supplement its invalidity contentions to include new prior art discovered in an earlier reexamination proceeding before the U.S. Patent & Trademark Office.[107]

> ### 5.   AirWatch diligently supplemented its contentions based on the Court's claim construction order

Finally, AirWatch diligently supplemented its invalidity contentions after receiving the Court's claim construction order on October 13, 2014.  And AirWatch has included with this

---

[103] *See* Section I.D.1., *supra.*

[104] *Id.*

[105] *See* Section I.D.2., *supra.*

[106] *See Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C-11-02226 SI, 2013 WL 322556, at *3 (N.D. Cal. Jan. 28, 2013) (granting leave to amend invalidity contentions because patentee's statement in claim construction brief justified new search for prior art).

[107] *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. 10-4875, 2012 U.S. LEXIS 43443, at *7, *68-69 (D.N.J. Mar. 30, 2012) (granting leave to supplement invalidity contentions to add two new prior art references that were previously submitted to USPTO during reexamination proceeding).

1   motion revised claim charts for the Clark CA and Clark US references with this motion, which

2   comes less than one month after the claim construction order.  This Court has routinely found

3   diligence for supplementations of invalidity contentions required by its claim construction

4   orders.[108]

### B.   AirWatch's Supplemental Contentions Are Highly Relevant

6          AirWatch has focused its motion for leave to supplement on the most material prior art in

7   this case.  Each of the prior art references at issue anticipate or render obvious the asserted claims

8   of the patents in suit.  Although AirWatch served other supplemental contentions during

9   discovery, for example, based on Good's supplemental infringement contentions and on

10  information acquired from third parties, it has chosen to seek leave only as to the supplements

11  discussed in this motion.  In doing so, AirWatch hopes to reduce the burdens on both the Court in

12  considering this motion and on Good in preparing its responsive case.

### C.   AirWatch's Supplements Will Not Unreasonably Prejudice Good

14         AirWatch's proposed amendments will not unreasonably prejudice Good.  Most of

15  AirWatch's proposed supplements do not implicate new prior art; they merely add support for

16  prior art included in AirWatch's original invalidity contentions.  This is the case for all of the

17  supplemental contentions that AirWatch provided on September 2, 2014, in response to Good's

18  supplementation of its infringement contentions, as well as for its supplements related to the

19  Windows NT, Windows SMS, and Altiris references.

20         Although AirWatch seeks to add four new anticipatory references and two new

21  obviousness combinations, Good has had ample notice of several of these references.  AirWatch's

22  original PDA Defense claim chart discussed PDA Defense v. 3.1 and expressly identified features

23  that read on limitations of the '219 patent's asserted claims.[109]  Because AirWatch had incomplete

---

[108] *See, e.g.*, *Network Protection Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 1949051, *2-3 (N.D. Cal. 2013) (granting leave to amend invalidity contentions where claim construction order necessitated the amendments); *Positive Techs., Inc.*, 2013 WL 322556, at *2-4 (same).

[109] AirWatch's Invalidity Contentions Pursuant to Patent L.R. 3-3, Ex. D-6 at 7-8 (Sept. 3, 2013) (Hartman Decl. Ex. 58) (quoting "PDA Security" book's disclosure of administrator's ability to

(Footnote continues on next page.)

1   information about version 3.1, it was unable to include this version as a standalone reference, but

2   it nevertheless informed Good of the version's relevance.  Further, AirWatch's PDA Defense

3   claim chart also cited the PDA Security book extensively.[110]  Good cannot claim that it would be

4   prejudiced by AirWatch's identification of the '606 patent as prior art to the '219 patent.  The

5   '606 is Good's own patent, and Good has litigated it many times before.[111]  And Good has had

6   notice of the Loveland reference since at least the prosecution of the '386 patent.  Because Good

7   has had notice of these references, it will not be prejudiced by permitting AirWatch to add them

8   to its contentions.[112]

9         Further, Good was able to, and did, take discovery relevant to PDA Defense, the '606

10  patent, and Loveland.  Good participated in the David Melnick deposition concerning PDA

11  Defense and in the discussions with Asynchrony about its response to AirWatch's subpoena.[113]

12  Good also participated in the deposition of Daniel Mendez, sole inventor of the '606 patent and

13  co-inventor of the '219 patent, served its own deposition notice for Mr. Mendez, and had ample

14  opportunity to question him.[114]  As to Loveland, the parties discussed that reference extensively

15  in their briefs and during the *Markman* hearing,[115] and Good participated in the depositions of

16  each of the '386 inventors.[116]

17  (Footnote continued from previous page.)

18  create policy file in RIM version of PDA Defense Enterprise v. 3.1); *see also* D. Melnick et al., PDA SECURITY:  INCORPORATING HANDHELDS INTO THE ENTERPRISE at 185 (McGraw-Hill 2003) (Hartman Decl. Ex. 18).

19  [110] *See, e.g.,* note 109, *supra.*

20  [111] *See Symantec Corp.*, 2013 WL 3490392, at *1-3 (granting motion to amend to add patentee's product as prior art to patent in suit).

21  [112] *Id.* (finding no prejudice where patentee had notice of prior art references).

22  [113] *See* D. Melnick Dep. Tr. at 4:15-22 (Oct. 24, 2014) (Hartman Decl. Ex. 47); *see, e.g., id.* at 105:15-19; *see also* Section I.C.3., *supra.*

23  [114] *See* Good's Not. of Dep. of D. Mendez (Oct. 16, 2014) (Hartman Decl. Ex. 67); D. Mendez Dep. Tr. at 7:18-8:3, 8:13-22 (Oct. 17, 2014) (Hartman Decl. Ex. 68); *see id.* at 93:23-94:5 (beginning of Good's examination at 11:19 a.m.).

24

25  [115] *See* AirWatch's Resp. Claim Constr. Br. at 18 (July 14, 2014) (Dkt. No. 108); Good's Reply Claim Constr. Br. at 11-12 (July 28, 2014) (Dkt. No. 114).

26  [116] *See* B. Tse Dep. Tr. at 5:18-25 (June 19, 2014) (Hartman Decl. Ex. 69); S. Bhat Dep. Tr. at 5:10-16 (Oct. 4, 2014) (Hartman Decl. Ex. 70); V. Badami Rough Dep. Tr. at 2:1-14 (Oct. 30, 2014) (Hartman Decl. Ex. 71).

27

28

Good also will not be unreasonably prejudiced by addition of the Shabhazi reference or the Hamasaki-Hayward and Blomstrand-Fergus-Clark combinations. These references are at issue in VMware's IPR petitions against the '386 and '219, respectively. Thus, granting AirWatch leave to amend to assert these references in this case will not increase Good's workload; it must contend with these references regardless.[117]

Finally, sufficient time remains for Good to analyze and respond to AirWatch's proposed supplements. The deadline for Good's responsive expert report on invalidity is approximately three months away, and trial is more than seven months away. Good has not identified any further claim construction required by AirWatch's supplemental invalidity contentions, nor has it requested any extension of the schedule to allow it to take discovery related to the supplemental contentions. Moreover, as explained above, AirWatch has sought to streamline its case through its supplemental contentions by seeking leave to amend only as to the most material prior art references, thus mitigating any prejudice to Good. Accordingly, any finding of unreasonable prejudice would be unwarranted.

### D.    No Gamesmanship Exists

AirWatch's motion for leave to supplement is not motivated by gamesmanship. Both parties have found it necessary to supplement their contentions multiple times over the course of this case. AirWatch on several occasions has proposed compromises through which the parties would stipulate to each other's supplemental contentions.[118] Although Good has rejected these efforts, at no point has it suggested any improper motive on AirWatch's part.

### IV.    CONCLUSION

For the foregoing reasons, AirWatch respectfully requests that the Court grant it leave to amend its invalidity contentions.

---

[117] *Oy Ajat, Ltd.*, 2012 U.S. LEXIS 43443, at *68-69 (concluding that allowing defendant to supplement invalidity contentions to add two new prior art references first disclosed during parallel reexamination proceeding would not unfairly prejudice plaintiff).

[118] *See* Section I.F, *supra*.

1    Dated:  November 11, 2014

                                                 By:   */s/ Richard S.J. Hung*

2

3                                                MORRISON & FOERSTER LLP

4                                                RACHEL KREVANS
                                            RICHARD S.J. HUNG

5

6                                                KILPATRICK TOWNSEND
                                            & STOCKTON LLP

7

8                                                SUSAN A. CAHOON (*pro hac vice*)
                                            ROBERT J. ARTUZ
                                            SCOTT KOLASSA

9                                                BENJAMIN M. KLEINMAN-GREEN

10                                               Attorneys for Defendant
                                            AIRWATCH, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28