Courtland L. Reichman, SBN 2668873
MCKOOL SMITH HENNIGAN, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Tel: (650) 394-1400; Fax: (650) 394-1422
creichman@mckoolsmith.com

Steven J. Pollinger (*pro hac vice*)
Craig N. Tolliver (*pro hac vice*)
Geoffrey L. Smith (*pro hac vice*)
Eric C. Green (*pro hac vice*)
MCKOOL SMITH, P.C.
300 West 6th Street, Suite 1700
Austin, Texas 78701
Tel: (512) 692-8700; Fax: (512) 692-8744
spollinger@mckoolsmith.com; ctolliver@mckoolsmith.com;
gsmith@mckoolsmith.com; egreen@mckoolsmith.com

Robert Muller, SBN 189651
Douglas P. Roy, SBN 241607
CYPRESS, LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Tel: (424) 901-0123; Fax: (424) 750-5100
bob@cypressllp.com; doug@cypressllp.com

Attorneys for Plaintiffs
Good Technology Corporation and
Good Technology Software, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Good Technology Corporation and<br>Good Technology Software, Inc.,<br><br>Plaintiffs,<br><br>vs.<br><br>AirWatch, LLC,<br><br>Defendant. | Case No. CV-12-05827 (PSG)<br><br>**PLAINTIFF GOOD TECHNOLOGY CORPORATION AND GOOD TECHNOLOGY SOFTWARE, INC.'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS**<br><br>Hearing: December 16, 2014 10:00am |

I.     **INTRODUCTION**..................................................................................................1

II.    **BACKGROUND**..................................................................................................2

III.   **ARGUMENT**......................................................................................................3

     A.    **AirWatch Has Not Shown Good Cause or Diligence**...................................4

          1.    AirWatch does not have good case to add eight patents and patent applications as alleged prior art, including one of the patents-in-suit..............................................................................5

               a)    AirWatch was not diligent in adding the '606 patent as prior art..............................................................6

               b)    AirWatch was not diligent in adding Loveland as prior art....................................................................7

               c)    AirWatch cannot justify adding at this late date the patents and patent applications used in its also belated IPR petitions........................................7

          2.    AirWatch's First Amended Invalidity Contentions are untimely and were not requested by Good ...............................9

          3.    AirWatch was not diligent in adding PDA Defense and Wolovitz as prior art for the '386 patent, and Good's Third Supplemental Contentions do not justify this ...........................11

          4.    AirWatch's supplements based on third-party discovery are not justified because AirWatch was not diligent .......................12

               a)    AirWatch was not diligent in seeking or reviewing Windows NT and Windows SMS source code and documents, or in providing its supplemental invalidity charts to Good.................................13

               b)    AirWatch was not diligent is seeking Altiris discovery and source code from Symantec or in reviewing the Altiris software.......................................14

               c)    AirWatch was not diligent in seeking PDA Defense discovery from Good, David Melnick, or Asynchrony. ...................................................16

           5.    AirWatch does not have good cause to supplement its Clark CA and Clark US invalidity claim charts for the '606 patent based on the Court's claim constructions ...........................17

               a)    The Court's construction of "untrusted client site" is similar to constructions from prior cases, and AirWatch is seeking to add in information beyond the Court's construction...............................17

b)      The Court's construction of "synchronizing" is consistent with the plain meaning and the information AirWatch seeks to add should have been included earlier ................................................19

c)      AirWatch prevailed on the the "temporary storage" term and is seeking to add information unrelated to the Court's construction ................................................19

**B.      Good Will Be Unduly Prejudiced** ................................................20

IV.   **CONCLUSION** ................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acco Brands, Inc. v. PC Guardian Anti-Theft Prods*,
 Case No. 04-3526 SI, 2008 U.S. Dist. LEXIS 88142 (N.D. Cal. May 22, 2008)..................4, 5

*DCG Sys. v. Checkpoint Techs., LLC*,
 2012 U.S. Dist. LEXIS 117370 (N.D. Cal. Aug. 20, 2012)....................................................10

*Fujifilm Corp. v. Motorola Mobility LLC*,
 2014 U.S. Dist. LEXIS 15006 (N.D. Cal. Feb. 5, 2014) .........................................................5

*Icon-IP Pty, LTD v. Specialized Bicycle Components, Inc.*,
 2014 U.S. Dist. LEXIS 148829 (N.D. Cal. Oct. 17, 2014).......................................................6

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
 2009 U.S. Dist. LEXIS 83090 (N.D. Cal. Aug. 31, 2009).........................................................6

*O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*,
 467 F.3d 1355 (Fed. Cir. 2006)....................................................................................3, 4, 25

*Personalweb Techs., LLC v. Google Inc.*,
 No. C13-01317-EJD, 2014 U.S. Dist. LEXIS 6806 (N.D. Cal. Jan. 17, 2014) ........................3

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
 No. C-11-02226 SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ............................................6

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
 2014 U.S. Dist. LEXIS 57519 (N.D. Cal. Apr. 23, 2014) ........................................................9

*Yodlee, Inc. v. CashEdge, Inc.*,
 No. C 05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007)........................................11

STATUTES

35 U.S.C. § 315(b) ....................................................................................................................8, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Good Technology Corporation and Good Technology Software, Inc. (collectively "Good") hereby oppose AirWatch, LLC's ("AirWatch") motion for leave to supplement its invalidity contentions.

## I.    INTRODUCTION

AirWatch's motion should be denied because it has not been diligent in amending its invalidity contentions and it does not, and cannot, show good cause for any of its proposed amendments. AirWatch could have made many of these amendments as early as its original invalidity contentions, and in any event should have made all of them earlier than it has. In fact, all of AirWatch's amendments have come after the August 22, 2014 Markman hearing.

First, AirWatch asserts that it diligently searched for prior art in connection with its original invalidity contentions, yet it seeks to add *one of the patents-in-suit* and seven other patents and patent applications as prior art. There is no reason this art should not have been discovered previously. Second, AirWatch contends that it is supplementing in response to Good's supplement of its infringement contentions, yet AirWatch waited nearly four months after receiving Good's supplement to provide its amendments in response. Third, AirWatch seeks to add prior art based on supposed "new theories" made in Good's Third Supplemental Contentions concerning passcodes. Yet those theories are not new, and have been in Good's prior contentions. Fourth, AirWatch asserts that certain supplements are justified by supposed challenges in obtaining third-party discovery. Again, however, AirWatch was not diligent in obtaining or reviewing the third-party discovery. Lastly, AirWatch contends that it is entitled to supplement in response to the Court's claim construction. Yet there is a long history of similar constructions in prior cases, and AirWatch cannot credibly assert it was surprised by the Court's claim constructions.

The facts show that AirWatch has not been diligent in any of its proposed amendments. Allowing these amendments would be unfairly prejudicial to Good given the late stage of the case and given that the claim construction process is complete. In fact, AirWatch is seeking a *near complete change* of its invalidity case.  November 14, 2014 was the due date for AirWatch

Case No. CV-12-05827 (PSG)      GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
SUPPLEMENT ITS INVALIDITY CONTENTIONS

1  to select its 20 prior art references for trial. When AirWatch presented its purported "selections"

2  on November 14, *all but one* of its purported "selections" were either brand new references

3  (eight in total) or changed theories (eleven in total). Smith Decl., Ex. AA.[1]  In short, AirWatch

4  was not diligent, and allowing its proposed wholesale change of its invalidity case now would be

5  unfairly prejudicial to Good and subvert the purpose of the Patent Local Rules.

6  ## II.    BACKGROUND

7          AirWatch has sought, and continues to seek, to change its invalidity contentions after the

8  August 22, 2014 Markman hearing in this case and near or after the close of fact discovery on

9  October 24, 2014. Dkt. No. 86. The timeline of AirWatch's attempted changes is as follows:



17  AirWatch served its Original Invalidity Contentions on September 3, 2013. Dkt. No. 181. Nearly

18  a year later on September 2, 2014, AirWatch served its First Amended Invalidity Contentions

19  and Corrected First Amended Invalidity Contentions seeking to make changes to 14 of its

20  invalidity claim charts and seeking to assert, for the first time, the '606 patent as invalidating

21  prior art against the '219 patent, even though Good had charged AirWatch with infringement of

22  both of these patents on day one when the complaint was filed. Dkt. No. 182-1. Over a month

23  later, on October 14, 2014, AirWatch served its First Supplemental Invalidity Contentions

24  seeking to change five previously served invalidity claim charts and seeking to add six new

---

[1] Citations to "Ex. __" refer to exhibits to the Declaration of Geoffrey Smith In Support of Good's Opposition to AirWatch's Motion for Leave to Supplement Its Invalidity Contentions ("Smith Decl.").

Case No. CV-12-05827 (PSG)      GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
                                SUPPLEMENT ITS INVALIDITY CONTENTIONS

claim charts covering nine new alleged prior art references.[2] Dkt. No. 180-1 at ¶¶ 9, 33, 39, 65-69; Dkt Nos. 182-13, 182-19, 185-5, 185-6, 185-7, 185-8, 185-9. Fact discovery closed on October 24, 2014 and Good made its election of sixteen claims on October 31, 2014.  Dkt. Nos. 86 and 163. Several weeks later, on November 10, 2014, after the close of fact discovery and Good's claim election, AirWatch served its Second Supplemental Invalidity Contentions on Good. Dkt. No. 180-1 at ¶¶ 28, 28, 40, 70, 71; Dkt Nos. 182-8, 182-9, 183, 185-10, 185-11. AirWatch's Second Supplemental Invalidity Contentions seek to change four invalidity charts and to add two new invalidity charts for the '386 patent. *Id.* On November 13, 2014, after AirWatch filed the present motion, AirWatch served yet another attempted change, namely seeking to change its attempted new Hamasaki invalidity chart first served on October 14, 2014. Smith Decl., Exs. N, O. This latest attempted change seeks to add further new theories and excerpts.

## III.   ARGUMENT

The Patent Local Rules "require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365-1366 (Fed. Cir. 2006). Under Patent Local Rule 3-6, "Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." "The good cause inquiry considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." *Personalweb Techs., LLC v. Google Inc.*, No. C13-01317-EJD, 2014 U.S. Dist. LEXIS 6806, at *6 (N.D. Cal. Jan. 17, 2014) (citation and internal quotations omitted). The moving party bears the burden of establishing diligence. *See O2 Micro*, 467 F.3d at 1366. Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice." *Id.* at 1368..

---

[2]  This includes invalidity charts for Nokia 9000i, Isikoff, and Boyer, which AirWatch is apparently not moving for leave to add to the case.

Case No. CV-12-05827 (PSG)    GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
                              SUPPLEMENT ITS INVALIDITY CONTENTIONS

1     When considering what constitutes good cause, "this Court has examined such factors as
2 the relevance of the newly-discovered prior art, whether the request to amend is motivated by
3 gamesmanship, the difficulty of locating the prior art, and whether the opposing party will be
4 prejudiced by the amendment." *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods*, Case No.
5 04-3526 SI, 2008 U.S. Dist. LEXIS 88142, *1-2 (N.D. Cal. May 22, 2008) (citation omitted). To
6 make a satisfactory showing of good cause, a party seeking to amend its invalidity contentions
7 must show that it "acted with diligence in promptly moving to amend when new evidence is
8 revealed in discovery." *O2 Micro*, 467 F.3d at 1363.

9     For example, in *O2 Micro*, 467 F.3d 1355, the circuit court upheld the district court's
10 denial of leave to amend contentions. The moving party in *O2 Micro* sought to amend its
11 contentions to add a new theory "over three months after the . . . deposition that had provided the
12 basis for the [new] theory." *Id.* at 1361. The Federal Circuit agreed with the district court that the
13 moving party had not shown good cause because it had not been diligent in seeking amendment
14 once it discovered the basis for amendment. *Id.* at 1366 ("If the parties were not required to
15 amend their contentions promptly after discovering new information, the contentions
16 requirement would be virtually meaningless as a mechanism for shaping the conduct of
17 discovery and trial preparation.").

18     **A.    AirWatch Has Not Shown Good Cause or Diligence[3]**

19     AirWatch contends that it diligently searched to identify prior art, hired three prior art
20 search firms, and devoted more than 200 hours to searching for prior art. AW Br. at 2, Dkt. No
21 180-2 at ¶ 3. Yet, of the claim charts yielded by that effort, AirWatch now seeks abandon or
22 change all but one of those, which would make 19 of its 20 prior art selections changed or newly
23 added charts. Smith Decl., Ex. A.  Since September 2, 2014, over a week after the claim
24 construction hearing, AirWatch has sought to change its contentions at least four times. This can

25
26 _____
[3] AirWatch provides no basis for adding two of its October 14, 2014 Invalidity Charts regarding
27 the '606 Patent—*i.e.*, its chart for Clark US combined with Isikoff and Boyer and its Nokia
9000i Chart. These charts should be disallowed for the additional reason that AirWatch has
28 provided no basis for their addition, much less showing that it was diligent.

hardly qualify as diligence. AirWatch fails to justify its delay or explain why it did not earlier find the eight new references it now seeks to add, nor does it justify or explain all the other changes it now seeks to make.

AirWatch cites *Fujifilm* for the idea that perfect diligence is not required, but in that case the moving party was far more diligent than AirWatch has been here. In *Fujifilm*, the moving party found a 14-year old press release that indicated potential prior art and required further investigation, kept the opposing party apprised that it was conducting an ongoing search for related prior art, specifically sought documents relevant to that art, and the opposing party produced 700 documents, most in Japanese, six months after the initial request. *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 U.S. Dist. LEXIS 15006 at *19 (N.D. Cal. Feb. 5, 2014). Despite all of this, it took the moving party less than two months after receiving that discovery to move to amend. *Id.* In addition, the Court noted that there was no prejudice because there were six months left in discovery. *Id.* In this case, AirWatch has not apprised Good that it was continuing to search for difficult to locate art and has taken nearly a year from its first invalidity contentions to serve the amendments. Further, Good is prejudiced because discovery has already closed in this case. In short, *Fujifilm* does not support AirWatch's position.

### 1.   AirWatch does not have good cause to add eight patents and patent applications as alleged prior art, including one of the patents-in-suit

AirWatch does not have good cause to add the eight patents and patent applications that it now seeks to add to the case as prior art. One of the factors for evaluating good cause is the difficulty of locating the prior art. *Acco Brands*, 2008 U.S. Dist. LEXIS 88142 at *1-2. A patent or patent application is not difficult to locate. Indeed, other patents and patent applications are one of the first places a party looks for prior art. Here, AirWatch seeks to add as prior art the '606 patent-in-suit, three additional patents and four patent applications, including an application referenced on the face of the '386 patent-in-suit. None of these are the proverbial needle-in-a-haystack. *See Icon-IP Pty, LTD v. Specialized Bicycle Components, Inc.*, 2014 U.S. Dist. LEXIS 148829, *5-8 (N.D. Cal. Oct. 17, 2014) (discussing the difficulty of finding long since discontinued saddles from an Italian bike component maker as a type of art that would be

1  difficult to locate, yet nonetheless denying the motion to amend). Rather, these are some of the

2  easiest pieces of art to locate. Patents are public and easily searchable. A party cannot show good

3  cause to amend its invalidity contentions where easily searchable, public art should have been

4  located long ago, as is the case here. *See Network Appliance, Inc. v. Sun Microsystems, Inc.*,

5  2009 U.S. Dist. LEXIS 83090 (N.D. Cal. Aug. 31, 2009) (denying motion to supplement when a

6  public article authored by an inventor was not located earlier).

7  **a)  AirWatch was not diligent in adding the '606 patent as prior art**

8  AirWatch seeks now to add the '606 patent as prior art against the '219 patent, even

9  though Good charged AirWatch with infringement of both of these patents on day one when the

10  complaint was filed.  Not until September 2, 2014 (nearly two years after the complaint was

11  filed), did AirWatch first indicate its desire to rely on the '606 patent as alleged invalidating

12  prior art with respect to the '219 patent. Dkt. No. 180-1 at ¶ 64, 185-4. This alone shows that

13  AirWatch's claims of diligence are incorrect.

14  AirWatch contends that a supplemental discovery response from Good on August 22,

15  2014 prompted AirWatch to consider the '606 patent as prior art to the '219 patent. AW Br. at

16  11. In particular, AirWatch represents that Good's reference to the "log out" procedure in the

17  '606 patent specification prompted AirWatch to consider the '606 patent as prior art against the

18  '219 patent. But Good had pointed this out already much earlier on January 16, 2014. Smith

19  Decl., Ex. J at 8, Good's First Supplemental Response to Defendants' Interrogatory No. 9 ("The

20  '606 Patent discloses "the automatic disabling being initiated in response to a deauthorization

21  indication at the remote site," . . . [T]he indication may be provided by a user of the device by,

22  for example, *pressing a logout button*, such as an 'unborrow me' button." *See, e.g.*, '606 Patent

23  at 9:19-22 (emphasis added)).

24  Moreover, AirWatch's attempted new claim chart does not even cite to the '606 patent

25  specification or Good's supplemental interrogatory response pointing thereto for the

26  "automatically disabling being initiated in response to a deauthorizaiton indiation at the remote

27  site" claim element. Smith Decl., Ex. I at 14-15. Rather AirWatch's newly sought claim chart

28

Case No. CV-12-05827 (PSG)     GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
SUPPLEMENT ITS INVALIDITY CONTENTIONS

cites to claim language from the March 2009, '606 Patent Reexamination certificate for the element in question and asserts that the '606 Patent reexamination certificate is invalidating prior art to the '219 patent. *Id.* Thus, AirWatch's attempt to belatedly assert the '606 patent as invalidating prior art to the '219 patent is not justified based on any recent discovery response from Good.

### b)  AirWatch was not diligent in adding Loveland as prior art

AirWatch also now seeks to add the Loveland patent application as prior art against the '386 patent, even though it was already art of record on the face of the '386 patent-in-suit when the complaint was filed in this case. Outstandingly, not until nearly two years later on October 14, 2014, did AirWatch first indicate its desire to rely on Loveland as invalidating prior art. Dkt. No. 180-1 at ¶ 66, 185-6. AirWatch claims that it first became aware of the Loveland reference as prior art for the '386 patent during claim construction briefing on the '386 patent. AW Br. at 12. Yet, AirWatch was aware, or should have been aware, of Loveland when its original contentions were submitted. Again, Loveland is art of record and is noted on the face of the '386 patent. Smith Decl., Ex. P at 1. In fact, Loveland is even discussed by both the examiner and the applicant in the '386 file history, as AirWatch itself is forced to admit. AW Br. at 12. This file history discussion regarding Loveland is what AirWatch has relied upon since February 10, 2014 as alleged support for its proposed claim construction for the "rules engine" term. Smith Decl., Ex. K at 9. In fact, AirWatch pointed to this in its claim construction briefing and at the claim construction hearing. Dkt. Nos. 108 at 18; 109-7 at 8. Thus, despite being aware of Loveland and the statements regarding Loveland in the file history since at least February 10, 2014, AirWatch did not provide any invalidity contentions for Loveland until over eight months later on October 14, 2014. Dkt. No. 180-1 at ¶ 66, 185-6. This is not diligence.

### c)  AirWatch cannot justify adding at this late date the patents and patent applications used in its also belated IPR petititions

AirWatch seeks to add three new prior art charts consisting of five new references which it used in its belated IPR petitions filed nearly two years after the filing of this lawsuit, well after the deadline specified in 35 U.S.C. § 315(b), *viz.*: (1) U.S. Patent No. 8,635,661 (Shahbazi); (2)

Combination of U.S. Patent No. 7,921,182 to Hamasaki and U.S. Patent Publication No. 2004/0025053 to Hayward (Hamasaki-Hayward); and (3) Combination of Intl Pub. No. WO 00/45243 to Blomstrand, U.S. Patent Publication No. 2002/0077999 to Fergus, and the Clark CA reference (Blomstrand-Fergus-Clark). AW Br. at 13 and 19. AirWatch first identified its intent to rely on these references as invalidating prior art on October 14, 2014. Dkt. No. 180-1 at ¶ 67-69, 185-7, 185-8, 185-9. AirWatch cannot justify the late assertion of these references. This late asserted art consists of patents and patent applications that AirWatch could and should have previously identified. Indeed, AirWatch fails to explain why the three prior art search firms it hired did not previously identify this art.

AirWatch suggests that the IPR petititons somehow justify its attempt to add this new art to the case now. AW Br. at 13 and 19. AirWatch cannot legitimately make this suggestion. Indeed, any distinction between VMWare and AirWatch is a façade. VMWare is AirWatch's parent company. AW Br. at 13. AirWatch is the party that stands to directly benefit from a favorable outcome in the IPR petitions. VMWare has no interest in the AirWatch litigation or the IPR petitions other than through AirWatch. In fact, the IPR petitions are tailored to AirWatch's litigation needs with the claims challenged in the petitions tracking the claims originally asserted in the AirWatch litigation. Smith Decl., Exs. Q-S. Further, the petitions were filed by AirWatch's litigation counsel, Morrison & Foerster, and at least one of the petitions was filed by the same individual attorney—Diek Van Nort—listed as VMWare counsel for the petition and counsel for AirWatch in this litigation. Smith Decl., Ex. Q; Dkt No. 118. Furthermore, AirWatch remains actively engaged with the IPRs at an executive and strategic level, including by way of VMWare's general counsel reporting to the AirWatch operating board with respect to the IPRs. Smith Decl., Ex. T (J. Marshall) at 104:8-107:24.

In addition to the significant role played by AirWatch's outside counsel, AirWatch has hired in-house counsel to represent AirWatch's interest while managing the IPRs for VMWare. Smith Decl. Ex. U (A. Dabbiere) at 73:18-74:1. In particular, Brooks Beard, AirWatch's former outside trial counsel from Morrison & Foerster, was hired in part to manage the IPRs in-house.

Case No. CV-12-05827 (PSG)   GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS

And as AirWatch's Chief Legal Counsel, Alan Dabbiere, testified, "Mr. Beard represents AirWatch's interests." *Id.* Thus, AirWatch and its counsel were actively involved in the identification of the prior art in the IPRs. Yet, not until after the IPR petitions were filed (which themselves are nearly one year late beyond the §315(b) time bar), did AirWatch notify Good of its desire to add, to this case, the art in the belated IPRs. AW Br. at 13; Smith Decl., Exs. R, S; Dkt Nos. 185-7, 185-8, 185-9.

### 2. AirWatch's First Amended Invalidity Contentions are untimely and were not requested by Good

AirWatch also seeks leave with respect to its First Amended Invalidity Contentions, which include 14 amended claim charts, seeking to change its invalidity theories with respect to art in AirWatch's Original Invalidity Contentions. Dkt. Nos. 180-1 at ¶ 22, 23, 182-2, 182-3. AirWatch contends that these attempted changes, first served on Good on September 2, 2014, are in response to Good's May 2014 Second Supplemental Infringement Contentions, yet AirWatch waited nearly four months after receiving Good's supplement, and until after the Markman hearing, to provide its attempted new theories. *Id.*; AW Br. at 3-4. AirWatch cites *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 57519, *8-10 (N.D. Cal. Apr. 23, 2014) and *DCG Sys. v. Checkpoint Techs., LLC*, 2012 U.S. Dist. LEXIS 117370, 3-4 (N.D. Cal. Aug. 20, 2012) in attempted support of its arguments. But notably, AirWatch ignores the fact that while AirWatch waited four months to provide its alleged "responsive" amendments, the moving party in *Verinata* waited *two days* to serve its amended contentions. *See id.* And in *DCG*, the court allowed the amendment because there was "substantial time" for further discovery. *Id.* That is not the case here.

In order to add rhetorical weight to its argument, AirWatch repeatedly exaggerates the length of Good's May 16, 2014 Second Supplemental Contentions. AW Br. at 1, 4, 16. Given the similar claim elements amongst the asserted claims, much of the information is repetitive. Further, the length of Good's Second Supplemental Contentions, which include many citations and excerpts to AirWatch's own document production, is not a proper basis for AirWatch's near four month delay in providing its attempted new theories. Good provided its supplemental

9

contentions (which were requested by AirWatch) on May 16, 2014, well before the Markman hearing on August 22, 2014. Dkt. No. 181-8. According to P.R. 3-3, AirWatch should have provided any responsive supplements or amendments within 45 days. Instead, AirWatch waited almost four months, until September 2, 2014 (and almost two weeks after the Markman hearing), to provide its changes. Dkt. Nos. 180-1 at ¶ 22, 23, 182-2, 182-3.

Further, AirWatch fails to explain any connection between Good's supplemental infringement contentions and the belated invalidity theories sought now by AirWatch. For example, AirWatch asserts that "Good added a new infringement theory for the '219 patent's 'maintaining … a list' limitation. " AW Br. at 4. But AirWatch fails to explain how any of its attempted amendments were premised on this. This is not surprising, because none of AirWatch's attempted new theories in its September 2, 2014 contentions relate to the '219 patent's "maintaining … a list" element. Smith Decl., Ex. B at 4-5 (redline showing no changes in AirWatch's invalidity chart for the "maintaining … a list" claim element).

AirWatch also suggests that Good requested that AirWatch supplement its invalidity contentions—but, that is not the case. AW Br. at 3-4. Rather, Good explained that it believed Good's own contentions were proper and provided sufficient detail, especially when compared to the detail that AirWatch included in its invalidity contentions. Dkt No. 181-6. Even taking AirWatch at its word that it believed Good was requesting a supplement, AirWatch still failed to be diligent in supplementing. On April 18, 2014, AirWatch stated that it would "take a fresh look" at its contentions but AirWatch failed to provide any amendments until nearly five months later on September 2, 2014. Dkt No. 181-7.

Finally, AirWatch suggests that it should be allowed to re-evaluate its validity case because AirWatch brought on new counsel in May. AW Br. at 17. AirWatch's original counsel, however, is fully competent and in fact is continuing to participate in this case and continuing to represent AirWatch in other cases it has filed against Good. Smith Decl., Ex. V at 5. AirWatch cites *Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259, at *1-4 (N.D. Cal. May 17, 2007), but ignores the fact that new counsel in that case discovered prior art that was

late identified because of the challenges of searching for art that was not publicly searchable. *Id.* at *5-7. Here, in contrast, the art that AirWatch seeks to add was, in fact, identifiable in publicly searchable databases.  Finally, as noted above, AirWatch was not diligent because it waited over five months after retaining its new counsel and indicating it would "take a fresh look" at its contentions before it provided its first amendments.

### 3.   AirWatch was not diligent in adding PDA Defense and Wolovitz as prior art for the '386 patent, and Good's Third Supplemental Contentions do not justify this

AirWatch further seeks to add two new prior art references—PDA Defense[4] and the Wolovitz patent application ("Wolovitz")—with respect to the '386 patent. AW Br. at 5-6. AirWatch first identified these references as prior art for the '386 patent on November 10, 2014 in its Second Supplemental Invalidity Contentions. *Id.*; Dkt. Nos. 180-1 at ¶ 29, 182-9. AirWatch premises these two new additions based on supposed "new theories" made in Good's Third Supplemental Contentions, yet those theories are not new, and have been in Good's prior contentions.

Specifically, AirWatch asserts that it is justified in adding the PDA Defense and Wolovitz references on the '386 patent based on "new theories" regarding passcodes in Good's Third Supplemental Contentions as to the '386 patent. AW Br. at 5-6. In particular, AirWatch asserts that "Good's November 7 supplement for the first time specifically identified 'passcode features,' including 'passcode timeout,' 'maximum failed passcode attempts,' and 'maximum period of time offline' as meeting the 'rules' limitation." AW Br. at 5, 17. To the contrary, Good's passcode theories were in both Good's Original and Second Supplemental Contentions and are not new. For example, Good's Original Contentions, served on May 17, 2013 identify "passcode profiles" as "rules [that] may be transmitted to the rules engine, such as the AirWatch MDM Agent, from a server."  Smith Decl., Ex. C at 84-86. These "passcode profiles" include settings for "passcode timeout," "maximum failed passcode attempts," and "maximum period of

---

[4] PDA Defense was previously asserted as prior art by AirWatch for the '219 patent, but not for the '386 patent.

Case No. CV-12-05827 (PSG)   GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS

time offline." Likewise, in Good's Second Supplemental Contentions, served on May 16, 2014 after receiving technical discovery from AirWatch, Good expressly identified the very same passcode features that AirWatch contends are "new" in Good's Third Supplemental Contentions, including "passcode timeout," "maximum failed passcode attempts," and "maximum period of time offline" as "rules." *See, e.g.,* Dkt. No. 184-5 at 90, 93, 107, 130, 131. Because the "passcode features" of AirWatch's products were accused since the time Good served its Original Contentions, AirWatch has no proper basis for now seeking to add the PDA Defense and Wolovitz references to the case for the '386 patent.

Moreover, AirWatch has long been aware of, or should have long been aware, of both the PDA Defense and Wolovitz references. For example, AirWatch has known of the PDA Defense art since at least the time that it served its Original Invalidity Contentions wherein it identified PDA Defense as prior art for the '219 patent. Smith Decl., Ex. D. Its original PDA Defense invalidity contentions for the '219 patent expressly reference "incorrect password attempts." *Id.* at 6-7. In fact, AirWatch cites to much of the same evidence in its new invalidity chart on the '386 patent that appeared in its original invalidity chart for the '219 patent. Simply moving evidence from the invalidity chart for one patent to the chart for another is not diligence, especially when such a move takes nearly a year.

Likewise, AirWatch provides no reasonable basis for seeking to add the Wolovitz patent application to the case at this late date. The Wolovitz patent application is a publicly available patent application and should have been identified by one of AirWatch's multiple prior art search teams long before November 10, 2014. Dkt. No. 182-9. Because Good's infringement theories regarding passcode policies have been in the case since the time of Good's Original Contentions, AirWatch should not be allowed to add new art at this late date under the guise of responding to Good's supplemental contentions.

>          **4.** **AirWatch's supplements based on third-party discovery are not justified because AirWatch was not diligent**

AirWatch asserts that certain supplements included with its First and Second Supplemental Invalidity Contentions, served on October 14, 2014 and November 10, 2014,

respectively, are justified by supposed challenges in obtaining and reviewing third-party discovery. AW Br. at 6-10. The challenges, however, were of AirWatch's own making. AirWatch was not diligent in obtaining or reviewing the third-party discovery it now seeks to add.

### a) AirWatch was not diligent in seeking or reviewing Windows NT and Windows SMS source code and documents, or in providing its supplemental invalidity charts to Good

AirWatch seeks to supplement its Windows NT and Windows SMS invalidity charts attached to its Original Invalidity Contentions with those charts included in its First Supplemental Invalidity Contentions served on October 14, 2014. AW Br. at 6-7, 17. AirWatch premises these late supplements on discovery received from Microsoft, but AirWatch was not diligent in seeking the Microsoft discovery. Specifically, although AirWatch's Original Invalidity Contentions, served on September 3, 2013, identify Windows NT as prior art for the '606 and '219 patents and Windows SMS as prior art for the '386 and '322 patents, AirWatch waited almost 5 months, until January 30, 2014 to serve a subpoena on Microsoft seeking any discovery whatsoever. Dkt. Nos. 181, 182-10.

Likewise, AirWatch was not diligent in reviewing the Microsoft discovery once Microsoft made it available. Microsoft first informed AirWatch that "[t]he code arrived and is ready for inspection pursuant to the PO" on April 17, 2014. Dkt. No. 182-11 at 2-3. By its own admission, AirWatch's first conducted a "preliminary review" of the Microsoft source code on May 27 and 28 and did not send its source code analyst to review the Microsoft code until June 26, 2014—over two months after the code was first available for inspection. AW Br. at 6-7. AirWatch attempts to excuse its delay due to "the enormous volume of the source code." AW Br. at 7. Here again, however, AirWatch was not diligent. Having recognized the large volume of code that it needed to review as early as May 2014 when AirWatch's counsel conducted its "preliminary review" of the code, AirWatch should have retained and deployed additional source code analysts. Instead, AirWatch retained and relied on a single source code analyst to review

the "enormous volume" of the Microsoft code. AW Br. at 7.

AirWatch was also not diligent in preparing and providing its supplemental Windows NT and Windows SMS invalidity charts to Good. Although, AirWatch admits that its source code analyst completed his analysis of the Microsoft code in late August, it took AirWatch a month and a half to review that analysis and provide supplemental charts to Good on October 14, 2014. AW Br. at 7. This delay is surprising, especially given AirWatch's assertion that the "revised [Microsoft] claim charts did not add new invalidity theories, but merely cite[] to the source code files corresponding to specific features of Windows NT and Windows SMS." *Id.* Yet, even this assertion from AirWatch is incorrect. For example, a comparison of AirWatch's supplemental Windows SMS claim chart to that included with AirWatch's Original Invalidity Contentions demonstrates that AirWatch's supplemental chart includes citations to documents, other than source code, that were not included in AirWatch's Original Invalidity Contentions. Smith Decl., Exs. E  (original) and F at 8-11 (supplemental). AirWatch provides no explanation as to why these non-source code supplements were not previously included.

AirWatch's marked lack of diligence with respect to seeking and reviewing discovery from Microsoft and providing its October 14, 2014 Windows NT and Windows SMS supplements demonstrates that AirWatch should not be permitted to add them to the case now.

### b) AirWatch was not diligent is seeking Altiris discovery and source code from Symantec or in reviewing the Altiris software.

AirWatch was also not diligent in seeking or reviewing Altiris documents and code from Symantec or in providing its supplemental contentions on Altiris. AirWatch seeks to supplement its Altiris invalidity chart attached to its Original Invalidity Contentions with charts included in its First and Second Supplemental Invalidity Contentions served on October 14, 2014 and November 10, 2014, respectively. AW Br. at 7-8; Dkt Nos. 182-19; 183. AirWatch's October 14, 2014 supplement seeks to add, *inter alia*, screenshots made from the Altiris software, and the November 10, 2014 supplement seeks to add references to source code provided by Symantec. AW Br. at 8. AirWatch attempts to justify these late supplements on discovery obtained from Symantec, but, once again, AirWatch was not diligent in seeking the discovery from Symantec.

GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
SUPPLEMENT ITS INVALIDITY CONTENTIONS

1    Although AirWatch's Original Invalidity Contentions served on September 3, 2013,

2    identifies Altiris as prior art for the '386 patent, AirWatch waited until  March 25, 2014—almost

3    6 months later—to serve a subpoena on Symantec seeking discovery regarding Altiris. Dkt. No.

4    182-14. AirWatch suggests this delay is due to its learning that "Symantec had acquired Altiris,

5    Inc." AW Br. at 7. A quick search on Google for "Altiris," however, immediately reveals Altiris

6    as a company acquired by Symentec. Smith, Declaration, Ex. W (showing Google search for

7    "Altiris"). AirWatch's almost 6 month delay in serving a subpoena on Symantec is therefore not

8    attributable to any challenges due to the investigation of Altiris by AirWatch.

9    AirWatch was also not diligent in reviewing the Altiris software and preparing the

10   screenshots it now seeks to add in its October 14, 2014 First Supplemental Invalidity

11   Contentions. Symantec first informed AirWatch that "a public link to the Altiris software is

12   available at http://www.solutionsam.com/solutions/6_0/altiris_ns_6_0.exe" on April 29, 2014.

13   Dkt. No. 182-18. Despite being directed to the public link for the alleged prior art Altiris

14   software in late April, AirWatch did not begin to review the software until September 2, 2014—

15   over four months later. AW Br. at 8. AirWatch attributes this four month delay to the

16   unavailability of its source code analyst during his review of the Microsoft source code. *Id.* But,

17   once again, AirWatch could and should have retained additional analysts to review the Altiris

18   software. Instead, AirWatch waited four months for its consultant to finish with the Microsoft

19   code review before starting work on its review of the Altiris software. *Id.*

20   Further, although AirWatch suggests that its First Supplemental Invalidity Contentions

21   with respect to Altiris only add product screen shots from the testing performed by its analyst,

22   AirWatch's supplements, in fact, go beyond just adding screen shots from the Altiris software. In

23   particular, AirWatch's First Supplemental Altiris chart further includes excerpts from Dell Axim

24   product documentation apparently obtained by AirWatch from the internet. *See, e.g.*, Smith

25   Decl., Ex. X at 3-9.  AirWatch provides no explanation as to why these supplements with respect

26   to Dell Axim could not have been added earlier.

27   Similarly, AirWatch was not diligent with respect to the Altiris source code it seeks to

28

Case No. CV-12-05827 (PSG)    GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO
                              SUPPLEMENT ITS INVALIDITY CONTENTIONS

add in its November 10, 2014 Second Supplemental Contentions. AirWatch asserts that it was diligent in seeking source code from Symantec, but in fact, the opposite is true. As AirWatch's correspondence with Symantec demonstrates, AirWatch did not seek source code from Symantec until September 17, 2014. Dkt. No. 182-17 at 4-5 (September 19 email stating "I went back and reviewed the subpoena, and I don't see where in the subpoena MobileIron requested the source code that you asked for on Wednesday."). Symantec made the code available for inspection on November 3-6—after the close of fact discovery—and AirWatch provided additional supplements to its contentions on November 10. AW Br. at 8. Again, AirWatch's waiting until September 17, 2014 to request this source code (which it supposedly believed necessary for its case) should not be excused.

### c) AirWatch was not diligent in seeking PDA Defense discovery from Good, David Melnick, or Asynchrony.

AirWatch was not diligent in seeking PDA Defense documents or code. AirWatch seeks to supplement its PDA Defense invalidity chart attached to its Original Invalidity Contentions for the '219 patent with a supplemental chart included with its Second Supplemental Invalidity Contentions served on November 10, 2014. AW Br. at 8-10. AirWatch premises these late supplements on the timing of discovery obtained from Asynchrony and the former president of Asynchrony's PDA Defense division, David Melnick. *Id.* at 9. AirWatch was not diligent in seeking this discovery. Although AirWatch was aware of PDA Defense, David Melnick and Asynchrony as early as September 3, 2013 when it served its Original Invalidity Contentions including alleged invalidity charts based on PDA Defense[5], AirWatch waited over a year until September 18, 2014 to serve David Melnick with a subpoena and waited until September 22, 2014 for MobileIron (a defendant in a related case) to serve a subpoena on Asynchrony. AW Br. at 9; Dkt. No. 183-7.

AirWatch attempts to justify its delay and that of MobileIron in serving the subpoenas on David Melnick and Asynchrony based on discovery and representations made by Good. AW Br.

---

[5] See Smith Decl., Ex. D at 1, PDA Defense Chart from Original Invalidity Contentions (referencing PDA Defense, David Melnick and Asynchrony).

at 9. Yet, here again, AirWatch was not diligent in seeking discovery and information from Good. Despite knowing about PDA Defense since at least September 3, 2013, AirWatch first sought information regarding PDA Defense and copies of the PDA Defense software from Good on May 19, 2014—over 8 months later—when it served requests for production. Dkt. No. 183-1 at 5-6. While Good was able to locate and produce certain documents regarding PDA Defense, Good informed AirWatch on August 11, 2014 that it could not locate any copies of the PDA Defense software. Then, as noted above, AirWatch waited over a month until September 18, 2014 to serve David Melnick with a subpoena and waited until September 22, 2014 for MobileIron to serve its subpoena on Asynchrony, despite knowing about Mr. Melnick and Asynchrony since at least September 2013. AW Br. at 9.

In short, AirWatch was not diligent and should have begun the process of requesting code and documents from Good, Mr. Melnick, and Asynchrony regarding PDA Defense far earlier than it did.

### 5.   AirWatch does not have good cause to supplement its Clark CA and Clark US invalidity claim charts for the '606 patent based on the Court's claim constructions

AirWatch seeks leave to supplement its Clark CA and Clark US invalidity claim charts for the '606 patent, provided to Good on November 10, 2014 with AirWatch's Second Supplemental Invalidity Contentions, on the basis of the claim constructions adopted by the Court for the "untrusted client site," "synchronizing" and "temporary storage" terms. AW. Br. at 13-14, 19-20. AirWatch does not have good cause to make these supplements now.

#### a)   The Court's construction of "untrusted client site" is similar to constructions from prior cases, and AirWatch is seeking to add in information beyond the Court's construction

AirWatch does not have good cause to supplement its Clark CA and Clark US charts based on the Court's construction of "untrusted client site" because the construction is similar to prior constructions of the term and the evidence that AirWatch now seeks to add should have been added previously based on AirWatch's own proposed construction. The construction adopted by the Court for "untrusted client site" is a "computer accessible to unprivileged users,

no matter the format of the workspace data manager or the presence of a network firewall." Dkt. No. 145. In prior cases involving the '606 patent since 2008, Courts have construed the term "untrusted client site" to mean "a computer that is outside the firewall which is accessible to unprivileged users." Dkt. No. 106 at 4 (identifying prior cases where the term "untrusted client site" as found in the '606 patent was construed). Despite being aware of the construction of "untrusted client site" adopted in prior cases, AirWatch now suggests that it was surprised by the similar construction adopted here. AW Br. at 13-14. Having been previously aware of prior cases involving the '606 patent, AirWatch should have included the supplements it now seeks to add to its Clark CA and Clark US charts long before November 10, 2014.

Moreover, AirWatch's additions to the Clark CA and Clark US charts regarding "untrusted client site" are consistent with AirWatch's own proposed construction requiring "a user to enter remote-site identification and authentication information" and should have been added earlier. Dkt. No. 108 at 2. For example, one portion that AirWatch is seeking to add for the "untrusted client site" element in its charts references a "handheld computer" "pass[ing] password and sign-on information" to a network computer. Smith, Declaration, Ex. L at 6. AirWatch provides no explanation as to why this citation was not, or could not, have been added previously under its own proposed construction requiring "remote site identification and authentication information."  In short, AirWatch has no basis to claim good cause to amend here.

Finally, many of AirWatch's supplements go beyond additions that pertain to the "untrusted client site" or the Court's construction of the term. For example, certain excerpts added by AirWatch to its Clark CA and Clark US charts on November 10, 2014, appear to pertain to AirWatch's contention that the Clark CA and Clark US references disclose a "smartphone"—not an "untrusted client site" as construed by the Court. Smith Decl., Ex. L at 3 (referencing a "fax/modem unit," "speaker," and "keyboard port."); Ex. M at 6 (referencing a "fax/modem interface unit"). Likewise, other additions made by AirWatch appear to be directed to AirWatch's contention that Clark CA discloses a "workspace data manager" which is claimed as providing for data presentation and synchronization, again not an "untrusted client site" as

construed by the Court. Smith Decl., Ex. L at 6 (referencing a "mail program" and "E-mail operations"). As such, AirWatch's November 10, 2014 supplements to the Clark CA and Clark US charts are not limited to supplements made with respect to terms construed by the Court, and AirWatch has no good cause to add these supplements now.

### b) The Court's construction of "synchronizing" is consistent with the plain meaning and the information AirWatch seeks to add should have been included earlier

AirWatch also does not have good cause to supplement its Clark CA and Clark US charts based on the Court's construction of "synchronizing." AW Br. at 13-14. The construction adopted by the Court for "synchronizing" is a plain meaning construction—*i.e.*,"reconciling data at the remote site with the manipulated workspace data"—and AirWatch does not have good cause to supplement with respect to the "synchronizing" term because the construction adopted by the Court is consistent with the plain meaning of the term. Dkt. Nos. 145. Claim 1 of the '606 patent claims "synchronizing the manipulated data with the data at the remote site." Dkt. No. 1-3 at col. 1:41-43. AirWatch should have anticipated the Court's plain meaning construction for "synchronizing" which is consistent with the claim language and should have included any evidence reflecting such synchronization in its Original Invalidity Contentions.

Furthermore, the excerpts from the Clark CA reference that AirWatch seeks to add are expressly described as showing "synchronization"—a term used in the claims. In particular, AirWatch seeks to add Figures 10A and 12 from the Clark CA reference, which the reference describes as showing "calendar and contact number synchronization" and "file and directory synchronization," respectively. Smith Decl., Ex. Y at cols. 30:4-5 and 32:13-15. Given that the claim terms at issue are "synchronization" and "synchronizing," these supplements should have been included in AirWatch's Original Invalidity Contentions. The Court's construction does not justify AirWatch adding them now.

### c) AirWatch prevailed on the the "temporary storage" term and is seeking to add information unrelated to the Court's construction

Finally, AirWatch further seeks to supplement its Clark CA and Clark US charts for the '606 patent with respect to the "temporary storage" element. AW Br. at 13-14. AirWatch,

however, cannot demonstrate good cause for this claim element, because AirWatch prevailed on this term. Specifically, P.R. 3-6 indicates that good cause may exist to supplement contentions where the court adopts a construction not proffered by the moving party. Patent Local Rule 3-6. For the term "temporary storage,"  the Court sided with AirWatch and construed the term to mean a "storage location for data that is deleted each time upon logout."  Dkt. No. 145. While the Court did not adopt AirWatch's construction verbatim (AirWatch had proposed the construction  "storage location for data that is deleted each time the user closes the workspace data manager"), the differences between the two constructions do not provide AirWatch with good cause to supplement. Dkt. No. 108 at 7.

In any event, the amendments that AirWatch is seeking to add do not appear to relate to the Court's "temporary storage" construction. For example, AirWatch seeks to add the following from the Clark CA and Clark US references to its contentions: "After the meeting is over, the calendar program synchronizes the files as described below and then removes them from the synchronization list and the handheld computer H…"  Smith Decl., Ex. L at 11-12, Ex. M at 10. Yet, these excerpts do not relate to the Court's construction of "temporary storage" requiring "data that is deleted each time upon logout." Importantly, AirWatch does not explain why this was not added previously based on its own proposed construction requiring "data that is deleted each time the user closes the workspace data manager."  Dkt. No. 108 at 7.

Simply put, AirWatch does not and cannot justify its supplements to the Clark CA and Clark US invalidity charts based on the Court's claim constructions nor can AirWatch explain why its supplements were not made much earlier in light of the plain meaning of the terms and/or AirWatch's own proffered constructions.

### B.      Good Will Be Unduly Prejudiced

Good will be unduly prejudiced because it has prepared its case, including its claim construction arguments and invalidity rebuttal positions, and made its discovery decisions based on AirWatch's Original Invalidity Contentions. All of AirWatch's amendments and supplements have come after claim construction and several have come after the close of fact discovery.

While Good has known of certain prior art references since the time of AirWatch's Original Invalidity Contentions, Good was not informed regarding AirWatch's current invalidity theories until after Good solidified its claim construction, infringement and validity positions.

In addition, eight of the references that AirWatch now seeks to add are newly identified patents and patent applications that AirWatch should have identified long ago. Although AirWatch suggests that Good will not be unduly prejudiced by AirWatch's eleventh hour attempt to add these eight new references, quite the opposite is true. AW Br. at 20-21. Specifically, AirWatch asserts that Good will not be prejudiced by the additions of the '606 patent and the Loveland patent application as prior art, because Good was previously aware of these references. *Id.* at 21. While Good may have previously known of these references, Good was not informed of the '606 patent and Loveland as *prior art relevant to this case* until after September 2, 2014 and October 14, 2014, respectively, when AirWatch first served Good with invalidity charts for these references. Dkt. Nos. 185-4 and 185-6. Though AirWatch cites *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C-11-02226 SI, 2013 WL 322556, at *3 (N.D. Cal. Jan. 28, 2013), to argue against Good's prejudice, it is factually inopposite. In that case, there were still five months left in discovery when the court allowed the amendment and only one deposition had taken place, so the opposing party was not prejudiced. *Id.* Here discovery has ended, and 69 depositions have occurred—Good's prejudice would be significant.

AirWatch also asserts that Good will not be unduly prejudiced by the addition of the Shahbazi, Hayward, Hamasaki, Blomstrand, and Fergus references to the case because they will be addressed in the belated IPR petitions. AW Br. at 22. But, Good was only made aware of these references in connection with the IPR petitions filed on October 6, 2014—just eight days before AirWatch served Good with new invalidity charts for these references—and Good is presently seeking to have the IPR petitions dismissed as time barred. Smith Decl., Exs. R and S; Dkt. No. 151. Given the late disclosure of AirWatch's amended and new invalidity charts, Good has been unable to adequately consider and prepare its claim constructions, infringement arguments and rebuttals to these new invalidity arguments.

Case No. CV-12-05827 (PSG)   GOOD'S OPPOSITION TO AIRWATCH'S MOTION FOR LEAVE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS

In addition, AirWatch's Second Supplemental Invalidity Contentions dated November 10, 2014, were served ten days *after* Good had already elected 16 claims from the 32 claims that it had previously been asserting in the case. Smith Decl., Ex. Z. Those supplemental contentions seek to add in two new invalidity charts and supplement four invalidity charts. Dkt. No. 180-1 at ¶¶ 28, 28, 40, 70, 71; Dkt Nos. 182-8, 182-9, 183, 185-10, 185-11. When electing its 16 claims for assertion, Good did not have the benefit of considering these new additions and supplements and would be unduly prejudiced by their addition now.

Good's objections to AirWatch's many sought changes and additions do not elevate form over substance. AirWatch seeks to use its recent additions and changes at trial, seeking a nearly wholesale change of its invalidity case. Smith Decl., Ex. AA. As discussed, of the 20 prior art references AirWatch selected on November, 14 2014, only <u>one</u> has been unmodified since AirWatch's original invalidity contentions, and fully eight of the references are brand new to the case since the Markman hearing as shown in the table below:

**AirWatch's 20 Elected Prior Art References[6]**

| New References Added After Markman | Amended/Supplemented After Markman | Original |
|---|---|---|
| 1.  Shahbazi '661<br>2.  Wolovitz '255<br>3.  Hayward '053<br>4.  Loveland '555<br>5.  Fergus '999<br>6.  Hamasaki '182<br>7.  Mendez '606<br>8.  Blomstrand '243 | 1.  Total Mobility<br>2.  Clark CA '337<br>3.  Hasebe '609<br>4.  PDA Defense<br>5.  Egan '393<br>6.  Trommelen '487<br>7.  Hanson '840<br>8.  Altiris 6 HHMS<br>9.  Marolia '907<br>10. Marolia '565<br>11. Marolia '449 | 1.  Wetherly '702 |

These late changes and additions, with respect to all but one of the 20 references that AirWatch has sought to select for trial, only further highlights the undue prejudice Good will suffer if AirWatch is permitted to redo its invalidity case in near entirety.

AirWatch suggests that Good will not suffer prejudice because it was present at the

---

[6] Ex. AA (AirWatch's Election of 20 Total Asserted Prior Art References, dated Nov. 14, 2014).

depositions of the inventors of the asserted patents and the deposition of David Melnick related to the PDA Defense art. AW Br. at 21. AirWatch, however, neglects to mention that AirWatch's First Amended Invalidity Contentions dated September 2, 2014 were served after two inventor depositions had taken place; AirWatch's First Supplemental Invalidity Contentions dated October 14, 2014 were served after four inventor depositions had already taken place; and AirWatch's Second Supplemental Contentions dated November 10, 2014 were served subsequent to *all* of the inventor depositions. Dkt. Nos. 185-17, 185-18, 185-19, 185-20. Similarly, with respect to David Melnick, AirWatch did not serve its supplemental PDA Defense contentions for the '219 patent or its new PDA Defense contentions for the '386 patent until November 10, 2014—over two weeks after Mr. Melnick's deposition. Dkt. Nos. 182-9; 183-16. Because AirWatch's amended and supplemental contentions were served after these depositions, Good was not aware of AirWatch's invalidity theories during the depositions and Good's presence at these depositions does nothing to negate the undue prejudice suffered by Good.

Good will also suffer undue prejudice to the extent that AirWatch is permitted to add its Windows NT and Windows SMS supplements to the case since Good was not given the opportunity to participate in this discovery from Microsoft. AirWatch admits in its brief that its counsel and source code analyst inspected source code and documents regarding Windows NT and Windows SMS made available by Microsoft starting in April 2014. AW Br. at 6-7. Yet Good was not informed that AirWatch was going to inspect the code and was not allowed to inspect the code itself. Rather, AirWatch only produced to Good the documents and source code print outs AirWatch had selected during its inspection of Microsoft for the first time on October 6. Smith Decl., Ex. G. Because Good was not informed of and allowed to participate in this inspection of Microsoft, it will be unduly prejudice if AirWatch is allowed to add its Windows NT and Windows SMS supplements to the case.

Good will also be unduly prejudiced by AirWatch's two supplements to its Altiris invalidity charts seeking to add product screen shots and source code. As AirWatch indicates in its briefing, AirWatch's analyst configured an Altiris test system and prepared various screen

shots from that test system. AW Br. at 8; Dkt. No. 180-1 at ¶ 6. But Good was not informed of this testing or given an opportunity to inspect the Altiris test system configured by AirWatch's analyst when preparing his screenshots. This is in stark contrast to the demands placed by AirWatch on Good concerning any testing of the AirWatch accused products by Good, including that AirWatch be allowed to inspect the devices used in Good's tests. Smith Decl., Ex. H. AirWatch's Altiris source code supplements are also unduly prejudicial to Good. AirWatch conducted its inspection of the Altiris source code—after the close of fact discovery—starting on November 3, 2014. The code it identified was produced on November 5, 2014, and AirWatch served its supplemental Altiris invalidity chart on November 10, 2014. AW Br. at 8, n. 40, 41. To the extent that AirWatch is permitted to add the Altiris source code to the case, Good will be forced to undertake the expense and undue burden of seeking to review the Altiris code outside of the discovery period.

As discussed above, it is not any deficiency by Good that has led to these situations, and thus Good should not be punished by AirWatch's late stage additions and amendments which significantly alter the issues in this case. The Patent Local rules of this district are vital to orderly management of patent cases and, like the rules in other patent-heavy venues, are "designed specifically to require parties to crystallize their theories of the case early in the litigation." *See O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (citations omitted). Allowing AirWatch to redo its contentions, in near entirety, to add new prior art references and new invalidity theories at this late date would eviscerate the purpose of Patent Local Rule 3-3 and reward AirWatch for its lack of diligence.

## IV.   CONCLUSION

AirWatch was not diligent in seeking to amend its invalidity contentions and allowing such an amendment will unduly prejudice Good. Thus, AirWatch's motion for leave to supplement its invalidity contentions should be denied.

DATED:       November 24, 2014          _____*GEOFFREY SMITH*_____
                                         McKOOL SMITH HENNIGAN, P.C.

                                         Courtland L. Reichman, SBN 2668873
                                         MCKOOL SMITH HENNIGAN, P.C.
                                         255 Shoreline Drive, Suite 510
                                         Redwood Shores, California 94065
                                         Tel: (650) 394-1400; Fax: (650) 394-1422
                                         creichman@mckoolsmith.com

                                         Steven J. Pollinger (*pro hac vice*)
                                         Craig N. Tolliver (*pro hac vice*)
                                         Geoffrey L. Smith (*pro hac vice*)
                                         Eric C. Green (*pro hac vice*)
                                         MCKOOL SMITH, P.C.
                                         300 West 6th Street, Suite 1700
                                         Austin, Texas 78701
                                         Tel: (512) 692-8700; Fax: (512) 692-8744
                                         spollinger@mckoolsmith.com;
                                         ctolliver@mckoolsmith.com;
                                         gsmith@mckoolsmith.com;
                                         egreen@mckoolsmith.com

                                         Robert Muller, SBN 189651
                                         Douglas P. Roy, SBN 241607
                                         CYPRESS, LLP
                                         11111 Santa Monica Blvd., Suite 500
                                         Los Angeles, California 90025
                                         Tel: (424) 901-0123; Fax: (424) 750-5100
                                         bob@cypressllp.com; doug@cypressllp.com

                                         Attorneys for Plaintiffs
                                         Good Technology Corporation and
                                         Good Technology Software, Inc.